The PEOPLE of the State of Colorado, Complainant,

v.

Steven Lee PIERSON, Attorney–Respondent.

No. 96SA77.

Supreme Court of Colorado, En Banc.

May 20, 1996.

Linda Donnelly, Disciplinary Counsel, James C. Coyle, Assistant Disciplinary Counsel, Denver, for Complainant.

No Appearance on Behalf of Attorney–Respondent.

PER CURIAM.

The respondent in this lawyer discipline proceeding defaulted before the grievance committee and has not appeared before this court. A hearing panel of the supreme court grievance committee approved a hearing board's findings and recommendation that the respondent be suspended from the practice of law for one year and one day, with reinstatement conditioned on certain restitution. Given the seriousness of the respondent's dishonest conduct and his utter disregard for these proceedings, however, we conclude that a three-year suspension is warranted.

I

The respondent was admitted to practice law in Colorado on December 29, 1993. Because the respondent did not answer the complaint filed by the assistant disciplinary counsel, a default was entered against him, and the allegations of fact contained in the complaint were deemed admitted. C.R.C.P. 241.13(b); *People v. Barr,* 855 P.2d 1386, 1386 (Colo.1993). Based on the respondent's default and the evidence presented, the hearing board found that the following had been established by clear and convincing evidence.

In January 1994, the respondent purchased a residence in Gunnison, Colorado, from Harold and Virginia Helm. The purchase price of the house was $62,000, and the respondent gave the Helms a promissory note secured by a deed of trust. The respondent was required to pay the Helms $473.37 per month, plus an annual payment of $1,500 on December 31 of each year, with a balloon payment due on December 31, 1999. The deed of trust provided that the respondent's promissory note was due on the transfer of the property, at the Helms' option. The

respondent recorded these documents on May 2, 1994.

The respondent subsequently placed an advertisement to sell the residence, and on May 14, 1994, Michael and Nina Dorren answered the ad. The respondent represented to the Dorrens that he and his wife had lived in the house for nine months, and that the sale price was $65,000. The respondent also stated that the property was free and clear of any encumbrances, and that the respondent would finance the purchase. The respondent and Michael Dorren discussed the transaction at the respondent's law office on May 16. The respondent offered and Dorren agreed that the respondent would prepare all of the documents prior to closing, including a deed of trust, warranty deed, promissory note, a title commitment demonstrating that the property was free and clear of any encumbrance, and a bill of sale for appliances.

The respondent stopped making payments to the Helms in May 1994. The Dorrens met the respondent at his law office on May 31, 1994, and signed the contract to purchase the property as well as certain closing documents. They paid the respondent $2,000 as a down payment. The respondent told Michael Dorren that he would send him a copy of the purchase contract after the respondent's wife signed it. The respondent never provided the Dorrens with a signed copy. He also failed to give the Dorrens the title commitment by the date of closing as provided by the contract, and failed to file the deed and other documents on May 31, 1994, as promised.

Nonetheless, on June 20, 1994, he misrepresented to Michael Dorren that the title was ready, that he had filed the documents on May 31, 1994, as he had promised, and that he would provide them to Dorren. He did file the documents on June 21, but he was terminated from his employment at a law firm on June 23, 1994.

The Dorrens began to move into the residence on July 1, 1994. The Helms arrived and informed the Dorrens that they held a deed of trust on the house. Michael Dorren went to an abstract company the same day and learned that the respondent had ordered a title commitment on or about June 20, that the commitment had been issued to the respondent on June 22, requiring a release of the Helm's deed of trust.

The respondent told Michael Dorren on July 5, 1994, that he would pay for the title policy, get the Helm deed of trust released within sixty days, and allow the Dorrens to make payments to Helm rather than to the respondent during the sixty days. He repeated these promises on July 11, and confirmed them in writing on July 12. The respondent paid the Dorrens $419 for the title policy on July 21, 1994, but has taken no further action, despite requests from the Dorrens.

Since September 13, 1994, the Helms and Dorrens have repeatedly tried to communicate with the respondent, without success. The hearing board determined that the respondent has apparently left Colorado. He left Glenwood Springs without giving any forwarding address, further demonstrating his efforts to avoid the consequences of his misconduct.

The foregoing conduct violated R.P.C. 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation); and C.R.C.P. 241.6(3) (misconduct involving any act or omission violating the highest standards of honesty, justice or morality).

## II

The hearing board determined that the respondent "engaged in a pattern of dishonest conduct with another party during the course of a personal real estate matter." The panel approved the board's recommendation that the respondent be suspended for one year and one day, and be required to make restitution to the Dorrens and the Helms as a condition of reinstatement.

Recommendations of the grievance committee as to the proper disciplinary sanction, however, are only advisory. *People v. Raubolt*, 831 P.2d 462, 464 (Colo.1992). Given the seriousness of the respondent's neglect, his abandonment of his clients, and given his apparent "complete indifference to, and disregard of" these disciplinary proceedings, *People v. Crimaldi*, 804 P.2d 863, 865 (Colo.1991), it is problemati-

cal whether a long period of suspension is sufficient.

*People v. Odom,* 914 P.2d 342, 344–45 (Colo. 1996); *accord People v. Madigan,* 914 P.2d 346, 348–49 (Colo.1996). The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*), provide that, in the absence of aggravating or mitigating factors, suspension is an appropriate sanction when "a lawyer knowingly engages in criminal conduct that does not contain the elements listed in Standard 5.11 and that seriously adversely reflects on the lawyer's fitness to practice." ABA *Standards* 5.12. On the other hand, disbarment is appropriate when:

> (b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

ABA *Standards* 5.11(b).

In mitigation, the respondent has no prior disciplinary record in his brief legal career in Colorado, *id.* at 9.32(a); and the board found that he is inexperienced in the practice of law, *id.* at 9.32(f). No other mitigating factors were found because the respondent did not participate in the proceedings.

The board did, however, find that the following aggravating factors were present: the respondent had a dishonest and selfish motive, *id.* at 9.22(b); he failed to cooperate in the disciplinary proceedings, *id.* at 9.22(e); the respondent has refused to acknowledge the wrongful nature of his conduct, *id.* at 9.22(g); and he has been indifferent to making restitution, *id.* at 9.22(j). The seriousness of the respondent's dishonest conduct in conjunction with his default could easily warrant disbarment.

It is a close question given the respondent's total disregard of these proceedings, but we have concluded that a suspension for three years is appropriate. We therefore reject the hearing panel's recommendations, and order that the respondent be suspended for a period of three years, and be required to pay the restitution set forth below as a condition of reinstatement.

## III

It is hereby ordered that Steven Lee Pierson be suspended from the practice of law for three years, effective thirty days after the issuance of this opinion. C.R.C.P. 241.21(a). It is further ordered that, prior to seeking reinstatement and as a condition thereof, Pierson shall make the following restitution as set forth in the hearing board's report. He is:

> required to make restitution to the Dorrens in the amount of $2,000, with interest at the statutory rate from May 31, 1994, plus all other costs, losses and fees incurred by them in their attempts to quiet title on the property as a result of respondent's conduct; and restitution to the Helms for their costs, losses and fees associated with resolving their remaining interests in the property as a result of respondent's conduct. . . .

It is further ordered that Pierson pay the costs of this proceeding in the amount of $185.92 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202. Pierson shall not be reinstated until after he has complied with C.R.C.P. 241.22(b)-(d).