The PEOPLE of the State of
Colorado, Complainant,

v.

Joe Louie ROMERO, Respondent.

No. GC98B60.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

June 17, 1999.

## OPINION AND ORDER IMPOSING SANCTIONS

### *SANCTION IMPOSED: ATTORNEY DIS-BARRED*

This matter was heard on May 10, 1999, before the Presiding Disciplinary Judge ("PDJ") and two hearing board members, Thomas Overton and Barbara Weil Gall, both members of the Bar. James S. Sudler, Assistant Regulation Counsel represented the People of the State of Colorado (the "People"). Joe Louie Romero ("Romero") did not appear either in person or by counsel.

### *I.  CHARGES*

On April 29, 1998 the People filed a complaint in this matter containing two counts against Romero. The first count, the O'Dell Matter, alleged violations of the Colorado Rules of Professional Conduct ("Colo.RPC") 1.3 (a lawyer shall not neglect a legal matter entrusted to him); Colo. RPC 1.4(a) (a lawyer shall not fail to keep the client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); Colo. RPC 1.5(a) (a lawyer shall not charge an unreasonable fee); Colo. RPC 8.4(a) (a lawyer shall not violate the rules of professional conduct); Colo. RPC 8.4(c) (a lawyer shall not engage in dishonesty, misrepresentation, fraud or deceit) and Colo. RPC 1.16(d) (a lawyer shall not fail upon termination of representation to protect his client's interest). The second count, the Legal Services Matter, involved conduct occurring prior to 1993 and alleged violations of the Code of Professional Responsibility [1], DR 1–102(A)(4)(conduct involving dishonesty, fraud, deceit or misrepresentation) and DR 1–102(A)(1)(violation of the code of professional responsibility). Romero failed to answer the allegations advanced in the complaint and default was entered against him on June 10, 1998. On September 22, 1998, Romero filed a Motion to Set Aside Default which was subsequently granted, and Rome-ro was allowed to file an answer. An At Issue Conference was set for February 1, 1999, requiring Romero's attendance. Romero was provided notice of the At Issue Conference. Romero failed to attend. The People moved the PDJ to issue a show cause order, directing Romero to show cause why his answer should not be stricken and default entered against him. The Show Cause Order was issued on February 3, 1999 and served upon Romero. Romero did not respond to the Show Cause Order. On February 25, 1999, the PDJ struck Romero's answer and entered default against him. The factual allegations set forth in the People's complaint were deemed admitted by the entry of the default order. *See People v. Pierson*, 917 P.2d 275, 275 (Colo.1996).

Notice of trial in this matter was served on Romero on March 9, 1999, sixty days in advance of the scheduled trial. Romero failed to appear on May 10, 1999 at the scheduled time of trial. At the trial, the People called Eddie O'Dell and Janice Munoz as witnesses. Exhibits 1 through 4 were offered and admitted into evidence. The PDJ and hearing board considered the testimony, the exhibits admitted, assessed the credibility of the witnesses, and made the following findings of fact which were established by clear and convincing evidence:

### *II.  FINDINGS OF FACT*

Romero has taken and subscribed the oath of admission, was admitted to the bar of the Supreme Court on October 2, 1973 and is registered upon the official records of the Court, attorney registration number 05571. Romero is subject to the jurisdiction of this court pursuant to C.R.C.P. 251.1(b).

### A.  The O'Dell Matter

On March 18, 1995 Eddie O'Dell and Lilly O'Dell retained Romero to represent them in several different matters. Romero agreed to handle the adoption of Mrs. O'Dell's eleven year old grandson who was born in Honduras. He also agreed to handle the immigra-

---

**1.** Effective January 1, 1993, the Colorado Rules of Professional Conduct replaced the Code of Professional Responsibility.

tion proceedings for Mrs. O'Dell's three adult children. The O'Dells provided the original immigration papers, inoculation records, photographs and fingerprints to Romero to initiate the immigration proceedings. Over time, Romero received $2,965 to undertake the tasks he had agreed to perform for the O'Dells.

In December 1996, Mr. O'Dell met with Romero. Romero told Mr. O'Dell that he had filed an adoption petition and the adoption should be finalized in approximately thirty days. In fact, Romero had not filled any adoption petition and, indeed, never did file the petition.

The O'Dells met with Romero on several occasions to discuss the immigration proceedings for the three O'Dell children. Romero consistently told the O'Dells that the immigration matters would be completed in the near future. In fact, Romero took no action on behalf of any of the three children. One of the children remains in Honduras due to Romero's neglect.

Another of the O'Dell children was arrested in Pennsylvania on an immigration violation and subjected to deportation proceedings. Mr. O'Dell was required to post bond, terminate Romero, and hire a second attorney to handle the same matters Romero had agreed to undertake. The replacement attorney contacted Romero to obtain the file and secure information in order to represent the arrested child. Romero told the replacement attorney that he had filed a visa petition for the arrested child and would provide the file. In fact, Romero had not filed any visa petition for the arrested child. Moreover, Romero never supplied the requested files to the replacement attorney.

### B.  The Legal Services Matters

Between 1982 and 1988 Romero served as Executive Director of Western Nebraska Legal Services, Inc. ("WNLSI"), a legal services group providing low and no cost legal services to the poor. While so employed, Romero claimed and received reimbursement for unauthorized and excessive per diem expenses and unauthorized expenditures for laundry, valet, gifts, family items, meals and liquor. Romero also claimed and received

reimbursement for plane tickets, taxis, parking and gasoline expenditures, which were not supported with receipts or other reliable documentation. In total, Romero converted approximately $ 6,500 of WNLSI property or cash to his own use. Romero entered into a civil settlement with WNLSI and repaid a portion of the converted funds.

Upon leaving WNLSI in 1988, Romero became Executive Director of Central California Legal Services ("CCLS"), another organization devoted to providing legal services to the poor. Romero served as Executive Director of CCLS from 1988 through September 1992. Most of the clientele of CCLS were indigent, poorly educated, vulnerable, and in need of legal services. Attorneys employed by CCLS were not allowed to accept legal fees or expenses from CCLS clientele.

Romero accepted cash and or money orders from at least five individuals who had sought legal assistance from CCLS to handle immigration, criminal and other matters. Romero instructed the clients to send cash or money orders to his home rather than CCLS. None of the money provided to Romero was transmitted to CCLS. In several instances the funds paid by the indigent CCLS clients were traced to payments made on Romero's personal VISA bill. On one occasion the funds paid to Romero were used to pay a filing fee for an unrelated third party. In two instances, Romero took money from clients and failed to perform any legal work for the client. In every instance where Romero deceived clients, the client was vulnerable. CCLS undertook a formal investigation of Romero's conduct and he was discharged.

## III.  CONCLUSIONS OF LAW

### A.  The O'Dell Matter

■ Romero received $2,965 from Eddie O'Dell to handle several separate legal matters. Romero told O'Dell he had performed certain portions of the required legal work when, in fact, he had not. He failed to properly attend to the legal needs he had agreed to provide. When one of the individuals Romero was supposed to be assisting

with an immigration matter was arrested in a distant state on immigration related charges, Romero deceived the replacement attorney by telling her that he had made the required filings when, in fact, he had not. Moreover, after the replacement attorney entered the case and attempted to minimize the damage caused by his neglect, Romero failed to provide the original documentation provided to him at the outset of the case.

Romero's neglect resulted in the arrest of at least one client, another client remaining in Honduras, and the expenditure of additional funds to correct his neglect. Romero compounded his misconduct by falsely reporting both to his client and replacement counsel that he had performed certain tasks for his client when, in fact, he had not. Romero told replacement counsel that he would provide his client's file to assist in rectifying the situation created by his neglect, and then failed to do so.

■ When a lawyer accepts fees from a client, abandons the client and causes serious harm while keeping their money, the lawyer violates the trust and confidence necessarily placed in him to care for the client's legal needs and he brings disrepute upon the entire profession. *People v. Steinman,* 930 P.2d 596, 599 (Colo.1997). The extensive and prolonged neglect evidenced by the facts in this case rises to the level of willful conduct. *People v. Singer,* 897 P.2d 798, 801 (Colo.1995)(extensive and prolonged neglect is considered willful misconduct). Romero not only abandoned his client, he knowingly misled the client, he mislead replacement counsel, and when serious injury befell the individual Romero was charged with assisting, he failed to provide either the original documentation provided to him or the meager file he had developed to rectify the client's situation, and he made no arrangement to adjust the fee charged to reflect the minimal efforts he had expended. Such conduct violates Colo. RPC 1.3 (neglect of a legal matter), Colo. RPC 1.4(a)(failure to keep a client reasonably informed), Colo. 1.16(d)(failure upon termination of representation to protect the client's interest), Colo. RPC 1.5(a)(charging of an unreasonable fee), Colo. RPC 8.4(c)(conduct involving dishonesty,

misrepresentation, fraud or deceit), and 8.4(a)(violating the rules for professional conduct).

### B. The Legal Services Matter

■ Between 1982 and 1992 Romero served as the Executive Director of two separate legal services corporations which provided low or no cost legal services to low income individuals. He misused his position of influence and trust to take money from vulnerable clients, failed to perform the services he promised, submitted expense reimbursement requests, and received reimbursements for unauthorized expenses, such as laundry, valet services, gifts, family items and liquor. Through his actions Romero caused serious harm to vulnerable people. Moreover, no evidence was presented suggesting that Romero had made any efforts whatsoever to correct the harm he imposed upon those who relied upon him for legal assistance.

Romero's conduct under this count occurred prior to the adoption of the Rules for Professional Conduct in 1993 and therefore violated the Code of Professional Responsibility DR 1–102(A)(4)(conduct involving dishonesty, fraud, deceit or misrepresentation) and Code of Professional Responsibility DR 1–102(A)(1)(violating the code of professional responsibility).

### IV. SANCTIONS/IMPOSITION OF DISCIPLINE

■ The PDJ and hearing board found that Romero's conduct constituted a violation of duties owed both to the profession and to the public. ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards* ") is the guiding authority for selecting the appropriate sanction to impose for lawyer misconduct.

ABA *Standard* 5.11 provides:

Disbarment is generally appropriate when:

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

ABA *Standard* 4.11 provides:

Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

ABA *Standard* 4.41 provides:

Disbarment is generally appropriate when:

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client

Romero's conduct in the O'Dell matter meets all of the criteria under ABA *Standards* 4.11, 4.41 and 5.11. Romero's conduct in the Legal Services matter also meets all of the criteria of ABA *Standards* 4.11 and 5.11. In the absence of substantial mitigating factors, disbarment is the suggested sanction for each of the claims brought in the within matter.

Romero did not appear for the scheduled trial of this matter and no evidence of mitigation was presented. The PDJ and hearing board considered certain factors in aggravation pursuant to ABA *Standards* 9.22. The People offered unrebutted evidence in aggravation that Romero engaged in a pattern of serious misconduct, *see id.* at 9.22(c); that he committed multiple offenses, *see id.* at 9.22(d); that he failed to appear when ordered to do so in this action, *see id.* at 9.22(e); that he caused serious injury to vulnerable clients, *see id.* at 9.22(h); that Romero had substantial experience in the practice of law (more than ten years); *see id.* at 9.22(i), and in the O'Dell matter, that he had an indifference to making restitution, *see id.* at 9.22(j).

Under the ABA *Standards* disbarment is the appropriate sanction for this conduct. Precedent under the decisions of the Colorado Supreme Court also call for disbarment. *See People v. Valley,* 960 P.2d 141, 144 (Colo.1998)(disbarment ordered for lawyer who abandoned clients, disregarded court orders and made misrepresentations to clients); *People v. Singer,* 955 P.2d 1005, 1007 (Colo.1998)(disbarment ordered for lawyer who misappropriated client funds and caused serious harm through neglect); *People v. Townshend,* 933 P.2d 1327, 1329 (Colo.1997)(disbarment ordered for lawyer

who took retainers from two clients and then abandoned the clients).

## V. ORDER

It is therefore ORDERED:

1. Joe Louie Romero, registration number 05571, is DISBARRED from the practice of law effective thirty-one days from the date of this Order, and his name shall be stricken from the roll of attorneys licensed to practice law in this state.

2. Romero is ORDERED to pay restitution of $ 2,965 to Eddie and Lilly O'Dell within sixty (60) days of the entry of this Order.

3. Romero is ORDERED to pay the costs of these proceedings within sixty (60) days of the date of this Order.

4. The People shall submit a Statement of Costs within ten (10) days of the date of this Order. Respondent shall have five (5) days thereafter to submit a response thereto.