**The PEOPLE of the State of Colorado, Complainant,**

v.

**Donald G. PAULSON, Attorney–Respondent.**

**No. 96SA392.**

Supreme Court of Colorado, En Banc.

Jan. 13, 1997.

Linda Donnelly, Disciplinary Counsel, James S. Sudler, Assistant Disciplinary Counsel, Denver, for Complainant.

Terrence T. McGannon, Colorado Springs, for Attorney–Respondent.

PER CURIAM.

The respondent in this lawyer discipline case neglected a number of client matters and failed to communicate with his clients. A hearing panel of the supreme court grievance committee approved the findings and recommendations of a hearing board that the respondent be suspended from the practice of law for one year and one day. We accept the panel's recommendations.

## I.

■ The respondent was admitted to practice law in this state in 1987. On October 31, 1996, the respondent was immediately suspended from the practice of law pursuant to C.R.C.P. 241.8 pending resolution of charges in addition to the ones herein addressed. The respondent did not answer the formal complaint filed in this case and the hearing board entered a default against him. The allegations of fact contained in the complaint were therefore deemed admitted. C.R.C.P. 241.13(b); *People v. Pierson,* 917 P.2d 275, 275 (Colo.1996). Based on the default and the evidence presented, the hearing board found that the following had been established by clear and convincing evidence.

## A.

Joyce Lupton hired the respondent in late September 1993 to represent her and her mother in a matter concerning visitation with Lupton's grandchildren. She paid the respondent $1,500 with a cashier's check. In October 1993, the respondent filed a motion for joinder of interested parties on behalf of Lupton and her mother in the dissolution of marriage proceeding involving Lupton's

daughter. The respondent did not tell his client that he had filed the motion and he did not send her a copy.

On November 1, 1993, the respondent obtained an order from the magistrate for mediation between Lupton and her daughter. The respondent arranged a mediation session for February 9, 1994, which session never actually took place. In the middle of December, Lupton learned that her daughter was going to leave Colorado. She spoke with the respondent on the evening of December 18 and he told her he was doing everything he could to help her.

Lupton went to the respondent's office on January 21, 1994 and asked for a copy of her file and for a billing statement. To date, the respondent has not supplied her with either the file or the bill. In late January 1994, she wrote the judge who was to hear the case and asked that her motion be "cancelled". She also told the judge that she had dismissed the respondent as her lawyer.

The hearing board concluded that the respondent's conduct violated R.P.C. 1.3 (a lawyer shall not neglect a legal matter entrusted to that lawyer); R.P.C. 1.4(a) (a lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information); and R.P.C. 1.15(b) (a lawyer shall promptly deliver to the client any funds or other property that the client is entitled to receive and render a full accounting upon request).[1]

### B.

Lee Westin hired the respondent to represent her in a paternity matter in September 1993. He filed the paternity action on her behalf in late September. The putative father agreed to blood testing to determine paternity. The respondent did not inform his client that the testing was to take place on December 27, 1993. Westin only learned of this during a contempt hearing the following April.

At a hearing on January 19, 1994, the court ordered Westin to present herself and the child at a laboratory for blood testing on February 2, 1994. A few days later, she called the respondent's office and left a message telling him that she wanted to drop the paternity action. The respondent did not call her back. On March 22, 1994, Westin sent the respondent a letter effectively firing him and asked that he reply to her letter by March 30, which he did not.

There was a hearing on a contempt citation against Westin held on April 4, 1994 for her failure to appear at the laboratory with her child on February 2. The child was apparently ill on that date. The respondent signed a proposed order directing his client to be at the laboratory for testing on April 14, but he never advised Westin of the date, and she missed it. Finally, the respondent's motion to withdraw was granted on August 3, 1994.

The respondent's conduct violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (failure to communicate with a client).

### C.

In March 1993, Roland Brodeur retained the respondent to represent him in a dissolution of marriage proceeding and a separate child custody matter involving his stepson. The respondent filed a petition for dissolution on Brodeur's behalf on March 8, 1993.

Brodeur was unsuccessful in communicating with the respondent about setting up a date for mediation, and the respondent did not submit a request for a mediation order until two months after the hearing on temporary orders. Because Brodeur was to attend

1. Count II of the formal complaint charged the respondent with failing to deposit an unearned advance fee into his trust account. Even though the respondent defaulted by not answering the complaint, the assistant disciplinary counsel moved to dismiss Count II because "the issue of whether respondent should have put 'nonrefundable retainers' into his trust account instead of his operating account should be fully litigated before disciplinable conduct is determined, and not be determined as a result of respondent's default." The hearing board granted the motion to dismiss. We therefore do not address this issue, nor do we express any opinion on whether the Rules of Professional Conduct ever permit such "nonrefundable retainers."

a mediation setting before proceeding to a hearing on permanent orders, Brodeur decided to set a date for mediation by himself, for November 9, 1993, without the respondent's assistance. Brodeur did finally meet with the respondent on November 29 to discuss final orders. The respondent's paralegal arranged for the final orders hearing to take place on April 27, 1994.

On January 17, Brodeur wrote to the respondent complaining about his representation, but the respondent never replied. On February 8, Brodeur wrote a letter to the respondent dismissing him and asking for the return of the unused portion of his fee and an itemized billing. The respondent did not answer the February 8 letter until after Brodeur filed a request for investigation with the Office of Disciplinary Counsel, and he has still not provided an appropriate accounting to Brodeur. The foregoing conduct violated R.P.C. 1.3 (neglect of a legal matter); R.P.C. 1.4(a) (failure to communicate with a client); and R.P.C. 1.15(b) (failure to promptly deliver to the client any funds that the client is entitled to receive and render a full accounting upon request).

### D.

Starting in April 1992, the respondent represented Carol West in her effort to gain custody of her grandson. She paid the respondent an advance fee of $1,500 and was told that if the respondent billed more than $1,500 he would send her a bill. He did not send her such a bill until after a request for investigation was filed with the Office of Disciplinary Counsel. The respondent's bill was for approximately $574. The respondent failed to keep his client reasonably informed of the status of the custody case and failed to comply promptly with her reasonable requests for information, contrary to R.P.C. 1.3 and R.P.C. 1.4(a). He also failed to put her advance fee into a trust account in violation of R.P.C. 1.15(a) (failure to hold client property separate from the lawyer's own property). West was forced to hire another lawyer to represent her and the case was finalized in September 1994.

### II.

The hearing panel approved the board's recommendation that the respondent be suspended for one year and one day, and neither the respondent nor the complainant has filed exceptions to this recommendation. The ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards*) provides that in the absence of aggravating or mitigating circumstances, suspension is generally appropriate when "(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or (b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client." *Id.* at 4.42. Similarly, "[s]uspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client." *Id.* at 4.12.

Aggravating factors include previous discipline consisting of an admonition in 1993 for failing to communicate with his client and not taking action on the client's case, *id.* at 9.22(a); and a pattern of misconduct, *id.* at 9.22(c). In mitigation, the hearing board found the presence of personal or emotional problems, *id.* at 9.32(c); and remorse, *id.* at 9.32(*l* ).

The hearing board also made the following finding which is of concern to the court:

The hearing board heard evidence on April 3 and May 21, 1996, of respondent's alcohol abuse during the relevant time period. Respondent had been in a rehabilitation program since January 1996. However, recently respondent has disappeared and he was not present for the hearing that was heard on August 23, 1996.

The hearing board supports respondent's past efforts to rehabilitate himself and to take responsibility for his alcoholism. At this time, however, respondent has not shown a meaningful and sustained period of successful rehabilitation.

This finding and the severity and extent of the misconduct indicate that a substantial period of suspension with the requirement of reinstatement proceedings is necessary to ensure that the respondent is once again fit

to practice law. *See People v. Fager*, 925 P.2d 280, 283 (Colo.1996) (lawyer suspended for one year and one day for neglecting multiple client matters and failing to account for client funds). Accordingly, we accept the hearing panel's recommendation.

### III.

Accordingly, it is hereby ordered that Donald G. Paulson be suspended from the practice of law for one year and one day, effective upon the issuance of this opinion. It is also ordered that the respondent pay the costs of this proceeding in the amount of $702.71 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 17th Street, Suite 920–S, Denver, Colorado 80202. The respondent must undergo reinstatement proceedings as set forth in C.R.C.P. 241.22(b)-(d).