The PEOPLE of the State of
Colorado, Complainant,

v.

Robert Melvin HOHERTZ, Respondent.

No. 03PDJ093.

Office of the Presiding Disciplinary Judge
of the Supreme Court of Colorado.

Oct. 13, 2004.

1020

Attorney Regulation. Upon conclusion of a sanctions hearing, the Presiding Disciplinary Judge ordered that Respondent Robert Melvin Hohertz (Registration # 13910) is disbarred from the practice of law, effective November 31, 2004. Respondent was also ordered to pay restitution and the costs incurred in this proceeding. It was established through the entry of default that, in several separate client matters, Respondent failed to deliver contracted services, failed to return unearned fees, failed to provide an accounting, and failed to surrender fees, papers, and property belonging to clients. In addition, Respondent violated a client confidence and deceived a client with untruthful assurances that he had taken steps to correct an inaccurate court order. Thus, Respondent violated Colo. R.P.C. 1.3 (neglect of an entrusted legal matter), 1.6(a) (revealing information relating to representation), 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation), 1.15(b) (failure to deliver client funds or render an accounting), and 1.16(d) (failure to protect client's interest upon termination). Respondent did not appear at the sanctions hearing or present evidence in mitigation. Aggravating factors included a histo-

ry of prior discipline, multiple offenses, vulnerable victims, substantial experience in the law, and indifference to making restitution. The Hearing Board found a pattern of client neglect and abandonment, as well as a pattern of deceit. The Hearing Board determined that Respondent's continued misconduct, along with the absence of corrective action, constitutes a danger to the public.

## DECISION RE: SANCTIONS PURSUANT TO C.R.C.P. 251.15(b)

The Hearing Board, consisting of MELINDA M. HARPER, CPA, HENRY C. FREY, a member of the bar, and Presiding Disciplinary Judge, WILLIAM R. LUCERO, conducted a sanctions hearing in this matter on August 16, 2004. Fredrick J. Kraus appeared on behalf of the People of the State of Colorado ("Complainant") and tendered a proposed stipulation. Respondent, Robert Melvin Hohertz ("Respondent"), pro se, did not appear. After reviewing the stipulation and Respondent's disciplinary history, the Presiding Disciplinary Judge ("PDJ") rejected the stipulation. Because the Hearing Board was concerned that Respondent may have failed to appear at the August 16, 2004 hearing due to believing the stipulation would be accepted, it continued the matter until September 7, 2004 to give Respondent the opportunity to appear. After sending notice to Respondent of the continuance and giving him the opportunity to appear, the Hearing Board reconvened the sanctions hearing on September 7, 2004. Fredrick J. Kraus appeared on behalf of Complainant. Respondent did not appear.

The Hearing Board issues the following opinion.

*SANCTION IMPOSED:* **ATTORNEY DISBARRED**

## I. PROCEDURAL HISTORY AND BACKGROUND

Complainant charged Robert M. Hohertz, Respondent, with neglecting several client matters entrusted to him, violating a client confidence, failing to return fees and other client property after termination, and deceiving a client by saying he had taken steps to correct an error when he had not done so. Respondent did not answer the Complaint, leading to entry of default. After considering Respondent's conduct, the serious injuries he caused clients, aggravating factors, including prior discipline, and the potential mitigating factor of depression on which no evidence was offered, the Hearing Board concluded Respondent should be disbarred.

On November 20, 2003, Complainant filed a complaint in this matter and sent the Citation and Complaint to Robert Melvin Hohertz, Respondent, via regular and certified mail. On November 21, 2003, Complainant filed Proof of Service. The Proof of Service shows that the Citation and Complaint were sent to Robert Melvin Hohertz, 301 South Weber Street, Colorado Springs, CO 80903. This was the address Respondent provided to the Colorado Supreme Court Office of Attorney Registration as required by C.R.C.P. 227. This certified letter and its contents were returned on November 24, 2003 with the notation "Moved Left No Address." The regular mail copy of the Complaint was not returned.[1]

Respondent did not file an answer to the Complaint. On February 2, 2004, Complainant filed a motion for default pursuant to C.R.C.P. 251.15(b) and C.R.C.P. 121, Section 1–14. On June 7, 2004, the PDJ granted this motion. By the entry of default under C.R.C.P. 251.15(b), all factual allegations and rule violations set forth in the Complaint are deemed admitted and are therefore established by clear and convincing evidence. *People v. Richards,* 748 P.2d 341, 347 (Colo. 1987). *See also* the Complaint, attached as Exhibit 1.

1. Complainant served notice to Respondent of the Motion for Default and both sanctions hearing dates at his registered office address and his home and other addresses. The notices for the Motion for Default were returned as undeliverable. On July 14, 2004, Complainant reached Respondent by cell phone and informed him of the August 16, 2004 hearing date. This Court sent its Order Re: Continuance of Hearing Date by Certified and first-class mail, which were returned. Respondent did not appear on August 17, 2004 nor at the September 7, 2004 reconvened hearing.

The Complaint enumerates five separate client matters, which are fully detailed. In summary, the Complainant alleges Respondent failed to deliver contracted services, failed to return fees he did not earn, and, in all but one case, failed to surrender fees, papers, and property belonging to clients. Since Respondent failed to appear at the sanctions hearing or otherwise contest Complainant's recommendation, the Hearing Board heard no evidence from Respondent neither on these issues, nor on the issues of the proper sanction and potential mitigation.

The factual background in this case is fully detailed in the Complaint. The Hearing Board adopts and incorporates by reference the Complaint and the facts and rule violations alleged therein.

## II. FINDINGS AND CONCLUSIONS

The Hearing Board considered the Complainant's argument, the facts established by the entry of default, and exhibits offered and admitted into evidence. These included the Disciplinary Report of Investigation, a true copy of Respondent's attorney registration, and two letters addressed to the Respondent in Colorado Springs, Colorado. Both letters notified Respondent of the date and place of the sanctions hearing. One of these letters was sent by certified mail to the address Respondent provided to the Attorney Registration Office of the Colorado Supreme Court as required by C.R.C.P. 227.

 Based upon the forgoing, the Hearing Board makes the following findings and conclusions by clear and convincing evidence:

(1) Respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on July 13, 1984, and is registered upon the official records of this court, registration no. 13910. He is therefore subject to the jurisdiction of this Court in these disciplinary proceedings.

(2) As set forth in the Complaint in the Heitz, Cantrell, Morris, Becker, and Gancarski matters, the Hearing Board finds by clear and convincing evidence Respondent violated Colo. RPC 1.3

(lawyer shall act with reasonable diligence and promptness in representing a client and shall not neglect an entrusted legal matter). Respondent failed in these matters to act with reasonable diligence and neglected these clients. *See People v. Holmes,* 951 P.2d 477 (Colo.1998).

(3) As set forth in the Complaint in the Heitz matter, Claim II, Respondent violated Colo. RPC 1.6(a) (lawyer shall not reveal client confidences) when he disclosed without Heitz's consent information to her friend about his representation. Client information is broadly interpreted. The comment to Colo. RPC 1.6(a) provides: "The confidentiality rule applies not merely to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source."

(4) As set forth in the Complaint in the Heitz, Cantrell, and Gancarski matters, Claims III, IV, VI, VII, IX, XII, and XIV, the Hearing Board finds Respondent violated Colo. RPC 1.15(b) (failing to promptly deliver client funds and render accounting after termination) and 1.16(d) (failing to take steps to protect and surrender client papers and property). *Holmes, id.*

(5) As set forth in the Complaint in the Morris matter, Claim X, the Hearing Board finds Respondent violated Colo. RPC 8.4(c) (conduct involving dishonesty, fraud, deceit or misrepresentation) when he told his client he had corrected an inaccurate child support order and was waiting to hear from the court, but this was not true.

## III. SANCTIONS

When imposing sanctions for violations as found above, ABA *Standards for Imposing Lawyer Sanctions* ("ABA *Standards* ") 3.0 (1992) directs the Hearing Board to consider the following factors:

(1) Duty violated;

(2) Lawyer's mental state;

(3) Actual or potential injury caused by the lawyer's misconduct;

(4) Existence of aggravating or mitigating factors.

## (1) Duty

Respondent violated the duty to professionally represent clients by failing to preserve client property and confidences and to act with diligence and competence.

## (2) Mental State

While it is clear Respondent has been diagnosed with clinical depression in the past and the Hearing Board suspects Respondent was probably suffering from depression at the time he represented the clients in this case, there is no evidence to determine what role, if any, depression had on his state of mind. What is undisputed, however, is that Respondent consciously took on these clients and failed to act with diligence in their cases even when they prompted him to do so.

## (3) Injury

Respondent's failure to professionally represent his clients caused them emotional and financial injury. In all but the Morris matter, Respondent took money from his clients, failed to do the work he promised, and caused damage to their business and personal interests. Mr. Gancarski testified defendant's failure to act on his bankruptcy caused harm in that he could no longer obtain supplies on credit. Further, when Respondent failed to answer their calls, the Gancarskis were forced to complete their bankruptcy without counsel because they did not have funds to hire another lawyer.

Michelle Becker wrote to the Hearing Board to complain of the great injury she suffered because of Respondent's neglect. While representing Mrs. Becker in a divorce action, Respondent failed to seek a restraining order against her physically abusive husband. Her husband threatened to kill the family dog and ultimately did so. Eventually, Mrs. Becker and her children were forced to leave the state to protect themselves.

## (4) Aggravating and Mitigating Factors

The Hearing Board finds the following *aggravating factors* under ABA *Standards* 9.22:

1. **Prior discipline:**
 A. **Letters of admonition:**
 - 1990 (failure to render an accounting)
 - 1992 (neglect of client matter)
 - 1994 (case 1—improper contact with represented party, conflict of interest; case 2—neglect of client matter)
 - 1996 (inappropriate conduct adversely reflecting on fitness to practice law)
 B. **Suspensions:**
 - 1995 (suspension for three months for neglect of client matter, failure to keep client informed, misrepresenting to client status of promised work)
 - 1996 (suspension for three years for neglect of several client matters, failure to keep clients informed, unreasonable fee charges)
 - 1999 (suspension for three months for an incident of domestic violence)
 - 2003 (suspension of a year and a day for neglect of a client matter, failing to keep a client informed, failing to submit an accounting)

2. **Pattern of misconduct:** As outlined above, Respondent has a history of neglecting client matters, mishandling fees, and misrepresenting whether he completed certain tasks.

3. **Multiple offenses:** In the instant case, Respondent was charged with multiple claims involving representation of five clients.

4. **Vulnerability of victims:** Michelle Becker and her children were especially vulnerable due to Respondent's failure to obtain a restraining order against Mrs. Becker's abusive husband. Mrs. Becker and her children were forced to leave the state as a result.

The Gancarskis were forced to handle their own bankruptcy because they were unable to hire and pay for alternative representation when Respondent neglected their case over an extended peri-

od. As a result of Respondent's neglect, Mr. Gancarski, a house painter, had difficulty purchasing supplies on credit to operate his business.

5. **Substantial experience in the law:** Respondent has practiced law for approximately 20 years and has ample experience.

6. **Indifference to making restitution:** Respondent made full restitution in the amount of $1,500 to one client, Margaret Cantrell. Other clients to whom Respondent owes restitution are:

| | |
|---|---|
| Heitz | $2,500 |
| Becker | $ 800 |
| Gancarski | $1,040 |

The Hearing Board finds the following *mitigating factors* under ABA *Standards* 9.32:

**Physical or emotional problems:** Respondent's disciplinary history, which was offered and accepted into evidence, shows chronic severe depression. There is no evidence, however, that the depression "directly caused" the misconduct in this matter. *See* Commentary, *ABA Standards* 9.32.

▪ Absent aggravating or mitigating circumstances, disbarment is generally appropriate for failing to act with reasonable diligence. The Hearing Board must consider the following factors set out in ABA *Standard* s 4.1 to decide whether disbarment is appropriate:

(a) Did Respondent abandon the practice and cause injury to a client?

(b) Did Respondent knowingly fail to perform services and causes injury to a client?

(c) Did Respondent engage in a pattern of neglect? *See* Commentary, ABA *Standards* 4.41; *People v. Williams,* 845 P.2d 1150 (Colo.1993). *See also People v. Dulaney,* 785 P.2d 1302 (Colo.1990).

▪ Here Respondent abandoned clients, failed to perform services he was hired to complete, and engaged in a pattern of neglect. This pattern is likewise consistent with the neglect he has demonstrated in the past as documented in his prior discipline.

Respondent's conduct in this case warrants serious discipline. His misconduct can be characterized as a pattern of client neglect, as well as a pattern of deceit in an effort to conceal his neglect. His history of continued misconduct neglect demonstrates a danger to the public. Respondent has been given multiple opportunities to address this pattern of neglect and has not done so. Without the long-standing pattern of neglect, the Hearing Board might have considered a suspension. *E.g. People v. Paulson,* 930 P.2d 582 (Colo. 1997). The aggravating factors, however, substantially outweigh any mitigation in this case.

The Hearing Board therefore concludes disbarment is the appropriate sanction in this case.

## IV. ORDER

It is therefore ORDERED:

1. Robert Melvin Hohertz, attorney registration no. 13910, is DISBARRED from the practice of law in the State of Colorado effective 31 days from the date of this Order and his name shall be stricken from the list of attorneys licensed to practice in Colorado.

2. Within 90 days from the date of this Order, Respondent shall pay restitution to the following individuals in these amounts:

| | |
|---|---|
| Heitz | $2,500 |
| Becker | $ 800 |
| Gancarski | $1,040 |

3. Respondent shall pay the costs of these proceedings. Complainant shall submit a Statement of Costs within 15 days of the date of this Order. Respondent shall have ten days thereafter to submit a response.

## EXHIBIT 1

Deborah D. Jones, +16917, Asst. Regulation Counsel, John S. Gleason, +15011, Regulation Counsel, Denver, CO, for Complainant.

## COMPLAINT

THIS COMPLAINT is filed pursuant to the authority of C.R.C.P. 251.9 through 251.14, and it is alleged as follows:

### Jurisdiction

1. The respondent has taken and subscribed the oath of admission, was admitted to the bar of this court on July 13, 1984, and is registered upon the official records of this court, registration no. 13910. He is subject to the jurisdiction of this court in these disciplinary proceedings. The respondent's registered business address is 301 South Weber Street, Colorado Springs, Colorado 80903. His home address is 2112 Farnon Court, Colorado Springs, CO 80906.

### Heitz Matter

2. In December 2001, Bianca Heitz filed for divorce in El Paso County District Court. Subsequent to issuance of a permanent restraining order against Ms. Heitz's husband, Ms. Heitz contacted the respondent regarding representation.

3. On February 15, 2002, Ms. Heitz met with the respondent and signed a fee agreement. The fee agreement provided that the respondent would charge $120 per hour to handle Ms. Heitz's divorce, including custody issues and an upcoming hearing on a contempt charge against her husband for violation of the restraining order. Ms. Heitz paid a $2,500 retainer.

4. A hearing on the contempt charge against the husband was set for March 14, 2002. The respondent arrived at court 10 to 15 minutes late.

5. In March 2002, Ms. Heitz requested an accounting from the respondent. She never received an invoice or an accounting in response to this request.

6. Also in March 2002, the respondent called Ms. Heitz. Ms. Heitz was not at home; the respondent discussed issues concerning the divorce with Ms. Heitz's roommate. At no time had Ms. Heitz given the respondent permission to discuss her case with anyone other than herself.

7. On April 1, 2002, Ms. Heitz dropped off tax information at the respondent's office. She instructed the respondent to deliver the information to opposing counsel so that Ms. Heitz's husband could file their income tax returns.

8. On April 13, 2002, Ms. Heitz learned from her husband that he had not received the tax records. Ms. Heitz went to the respondent's office, retrieved the documents, and hand-delivered them to opposing counsel.

9. In May 2002, Ms. Heitz and her husband reconciled. A hearing on the contempt charge was scheduled for July 16, 2002. Ms. Heitz called the respondent and explained that she had reconciled with her husband and wanted to dismiss the contempt of court charges, drop the divorce, and terminate the restraining order.

10. The respondent took no action; therefore, the attorney for Ms. Heitz's husband's prepared the documents required to dismiss the divorce. Ms. Heitz took these documents to the respondent, and directed him to sign them and send them to opposing counsel. The respondent did not do this.

11. On July 16, 2002, a hearing was held on the contempt matter. Ms. Heitz, her husband, and her husband's attorney attended the hearing. The respondent was still obligated to attend the hearing. The respondent did not attend the hearing.

12. The respondent has not accounted for, or returned, the $2,500 retainer or any portion thereof.

### Claim I

**[A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer—Colo. RPC 1.3]**

13. Paragraphs 1 through 12 are incorporated herein by reference.

14. Colo. RPC 1.3 provides that a lawyer shall act with reasonable diligence and promptness in representing a client, and that a lawyer shall not neglect a legal matter entrusted to that lawyer.

15. The respondent failed to act with reasonable diligence and neglected the client's legal matter by failing to deliver tax information as directed, prepare appropriate pleadings to dismiss the contempt matter and the divorce, and attend the July 16, 2002, hearing.

16. The respondent knew or should have known that his lack of diligence and promptness and/or neglect continued to occur over a period of months and involved a pattern and practice of lack of diligence and promptness and/or neglect.

17. The respondent's lack of diligence and promptness and/or neglect caused potentially serious injury to the client.

18. The respondent's failure to act on behalf of his client violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim II

[A Lawyer Shall Not Reveal Information Relating to Representation of a Client Unless the Client Consents After Consultation—Colo. RPC 1.6(a) ]

19. Paragraphs 1 through 12 are incorporated herein as if fully set forth.

20. Colo. RPC 1.6(a) provides that a lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraphs (b) and (c) of the rule.

21. The respondent violated Colo. RPC 1.6(a) by disclosing to Ms. Heitz's friend information about his representation of Ms. Heitz, without client consent and without implied authorization.

22. No exception contained in paragraphs (b) and (c) of Colo. RPC 1.6 applies to this matter.

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim III

[A Lawyer Shall Promptly, or Otherwise As Permitted By Law or Agreement, Deliver to the Client or a Third Person any Funds the Client or Third Person is Entitled to Receive and Upon Request, Render a Full Accounting—Colo. RPC 1.15(b) ]

23. Paragraphs 1 through 12 are incorporated herein by reference.

24. Colo. RPC 1.15(b) provides that upon receiving funds or other property in which a client has an interest, the lawyer shall, upon request by the client, render a full accounting regarding such property.

25. Ms. Heitz requested an accounting and a refund of unearned fees. The respondent failed to provide such refund or otherwise account for the payments made by the client. The respondent has continued his failure to deliver these funds to the client or otherwise account for them. The respondent's conduct violated Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim IV

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

26. Paragraphs 1 through 12 are incorporated herein as if fully set forth.

27. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

28. The respondent effectively terminated representation of this client when he failed to handle this client's needs in May 2002, and failed to disclose that he would not attend to those needs and/or the July 16, 2002 hearing.

29. The respondent gave no notice to the client that he was terminating the relationship.

30. The respondent failed to return to the client any portion of the $2,500 retainer, not all of which had been earned. The client is entitled to receive the same.

31. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### *Cantrell Matter*

32. The respondent handled a bankruptcy for Margaret Cantrell, which was concluded on or about October 5, 2001. Ms. Cantrell did not succeed in discharging her student loans in the bankruptcy, and she subsequently hired the respondent to file an adversary proceeding to discharge the student loans.

33. In December 2001, Ms. Cantrell's daughter provided $1,500 to the respondent as a flat fee for legal representation of Ms. Cantrell in the adversary proceeding.

34. In December 2001, Ms. Cantrell moved from Colorado to California to live with her daughter. Over the next six months, she called the respondent no less than once a month. Each time she talked to him, he had not yet filed the adversary proceeding.

35. On July 22, 2002, Ms. Cantrell wrote a letter to the respondent explaining her concern that the proceeding had not yet been filed. In the letter, she told him to file the proceeding or return her fees.

36. In August of 2002, Ms. Cantrell scheduled a telephone conference with the respondent, but instead went to his Colorado Springs office at the appointed time. Within an hour the respondent had completed the paperwork so that the adversary proceeding could be filed.

37. Shortly after the adversary proceeding was filed, Ms. Cantrell received a notice from the court that two entities would need to be served. The respondent received this notice as well. After numerous promptings by Ms. Cantrell, the respondent finally prepared the papers and sent them to the Sheriff's office in California for service. The respondent never filed for an extension of time; thus the court closed the case on December 12, 2002, prior to service.

38. Ms. Cantrell verbally requested an accounting and refund on several occasions. The respondent failed to provide such accounting and/or refund.

39. On December 11, 2002, Ms. Cantrell sent a letter to the respondent requesting a refund of one-half of the money paid. She explained to the respondent the problems he had caused by not getting this work done for her. The respondent failed to respond.

40. On February 24, 2003, Ms. Cantrell sent the respondent a certified letter requesting an accounting and a full refund. She filed a complaint with Attorney Regulation Counsel at this same time. Ms. Cantrell received a full refund of $1,500 from the respondent in early June of 2003.

### *Claim V*

### [A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer—Colo. RPC 1.3]

41. Paragraphs 32 through 40 are incorporated by reference.

42. Colo. RPC 1.3 provides that with reasonable diligence and promptness in representing his client and shall not neglect a legal matter entrusted to that lawyer.

43. The respondent did not file the adversary proceeding in a timely manner, nor did he serve the defendants prior to the court's closing of the case.[2]

44. By his lack of reasonable diligence and promptness, and by neglecting Ms. Cantrell's case in relation to the adversary proceeding, the respondent violated Colo. RPC 1.3.

---

2. Closing does not equate to dismissal. If Ms. Cantrell filed a motion to re-open the case in a timely fashion, she would have a reasonable chance for success.

WHEREFORE, the complainant prays at the conclusion hereof.

### Claim VI

[A Lawyer Shall Promptly, or Otherwise As Permitted By Law or Agreement, Deliver to the Client or a Third Person any Funds the Client or Third Person is Entitled to Receive and Upon Request, Render a Full Accounting—Colo. RPC 1.15(b) ]

45. Paragraphs 32 through 40 are incorporated herein by reference.

46. Colo. RPC 1.15(b) provides that upon receiving funds or other property in which a client has an interest, the lawyer shall, upon request by the client, render a full accounting regarding such property.

47. Although Ms. Cantrell requested an accounting and a refund of the fees paid, the respondent failed to provide such refund or otherwise account for the client's payments promptly. The respondent's conduct violated Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### Claim VII

[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]

48. Paragraphs 32 through 40 are incorporated herein as if fully set forth.

49. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

50. The respondent effectively terminated representation of Ms. Cantrell by failing to re-open the proceeding after failing to effect service prior to the court's closing of the adversary proceeding.

51. The respondent failed to refund promptly any portion of the client's $1,500 retainer. The client was entitled to receive a prompt refund.

52. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the complainant prays at the conclusion hereof.

### Morris Matter

53. In March 2001, Margaret Morris hired the respondent for representation in a divorce action which was already pending in El Paso County District Court, 00DR2470. The respondent appeared with Ms. Morris at a hearing at which the decree was entered, and the final orders hearing was set for May 24, 2001.

54. On May 24, 2001, the respondent called the court and vacated the hearing, stating that both parties wanted to vacate the hearing because the parties intended to obtain a parenting time evaluation. Thereafter, the respondent took no action despite several calls from Ms. Morris prompting him to do so.

55. In August 2001, a notice was issued providing that the case would be dismissed due to failure to prosecute if no other action was taken. The court ordered that motions be filed by October 1, 2001.

56. On October 1, 2001, the respondent filed a motion requesting a parenting coordinator.

57. On October 29, 2001, a status conference was held, at which time the court directed counsel to agree to a parenting coordinator, or to contact the court if there was a dispute.

58. On November 30, 2001, a second delay prevention order was issued. It stated that the parties needed to file a stipulation regarding a parenting coordinator within 10 days. The respondent did not obtain or coordinate any agreement for appointment of a parenting coordinator.

59. On December 11, 2001, the respondent called the court and stated that his

client was hiring an independent custody evaluator, and he requested that a hearing be set some two to three months in the future. Despite his assertion, the respondent failed to pursue appointment of a custody evaluator.

60. Following issuance of another delay prevention order, the court scheduled a status conference for February 21, 2002. A final orders hearing was set for April 2, 2002. The respondent did not notify Ms. Morris of the status conference or the final orders hearing.

61. On February 21, 2002, a status conference was held. The respondent failed to appear. A note in the registry of actions states that he was in chambers later that date and was informed of the case status.

62. On April 2, 2002, the permanent orders hearing was held. Prior to the hearing Ms. Morris had given the respondent expense receipts of over $2,000 related to the couple's children. These expense receipts were relevant to the issues addressed at the permanent orders hearing. However, the respondent failed to present those receipts at the hearing. As a result, the court denied reimbursement of Ms. Morris for those child-related expenses.

63. The court determined monthly income figures for the two parties. The respondent was ordered to prepare an order and decree, *nunc pro tunc* (without a specified date). The respondent was aware of the court's order that he prepare an order and decree.

64. Because no progress had been made in the case, the court issued another delay prevention order on June 24, 2002.

65. On August 13, 2002, the final orders were entered by the court, with the husband to pay child support of $377.35 per month by wage assignment effective April 1, 2002. The respondent did not prepare a written child support order for the court until a month later. When he did so, the respondent indicated the amount was $337.35 ($40 below the amount ordered by the court).

66. Ms. Morris notified the respondent that his proposed child support order was incorrect. On September 27, 2002, the respondent submitted a revised proposed order which corrected the amount to $377.35 per month, with $84.34 per month towards the accumulated arrearage, making a total payment of $461.69. (The husband had not paid child support from April through September, creating an arrearage of $2,264.10. This amount divided by a payment period of 24 months resulted in an additional monthly payment of $94.34—not $84.34 as stated by the respondent. However, the respondent did not explain the basis for this arrearage amount.)

67. On October 10, 2002, the Judge signed a revised support order stating the amount of monthly child support as $377.35. The Judge lined through all reference to back child support, noting that there was nothing in the decree regarding an arrearage.

68. Ms. Morris did not get copies of any of the orders until November 2002 after she called the respondent in order to get proof of her child support for re-financing purposes. She learned at that time that the court had deleted the amount for the child support arrearage. The respondent assured Ms. Morris that he was having the problem corrected and was waiting to hear back from the Judge regarding the matter. This statement was not true; the respondent knew at the time he made such statement that it was not true. The respondent had not contacted the court to rectify the issue, and did not do so in the future.

69. When Ms. Morris called the respondent back, he told her he would handle this entire matter after the first of the year. This was unacceptable to Ms. Morris, and she asked him to withdraw. The respondent's motion to withdraw was granted in January 2003.

70. Ms. Morris paid the respondent a total of $2,000. She requested an accounting. Ms. Morris never received an accounting or billing statements from the respondent.

## Claim VIII

[A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer—Colo. RPC 1.3]

71. Paragraphs 53 through 70 are incorporated by reference.

72. Colo. RPC 1.3 provides that with reasonable diligence and promptness in representing his client and shall not neglect a legal matter entrusted to that lawyer.

73. The respondent did not pursue a custody evaluation timely; did not obtain a parenting coordinator timely; did not appear for all hearings; did not prepare an order or decree timely; failed to introduce the expenses related to the children; and did not pursue correction of the child support order timely.

74. By his lack of reasonable diligence and promptness, and by neglecting Ms. Morris' case in relation to the parenting time evaluation, child support matters, and moving the case forward, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim IX

[A Lawyer Shall Promptly, or Otherwise As Permitted By Law or Agreement, Deliver to the Client or a Third Person any Funds the Client or Third Person is Entitled to Receive and Upon Request, Render a Full Accounting—Colo. RPC 1.15(b) ]

75. Paragraphs 53 through 70 are incorporated herein by reference.

76. Colo. RPC 1.15(b) provides that upon receiving funds or other property in which a client has an interest, the lawyer shall, upon request by the client, render a full accounting regarding such property.

77. Although Ms. Morris requested an accounting, the respondent failed to account for the payments made by the client and his use of those funds. The respondent contin-ued to fail to account for the funds. The respondent's conduct violated Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

## Claim X

[A Lawyer Shall Not Engage In Conduct Involving Dishonesty, Fraud, Deceit Or Misrepresentation—Colo. RPC 8.4(c) ]

78. Paragraphs 53 through 70 are incorporated herein by reference.

79. Colo. RPC 8.4(c) provides that it is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

80. The respondent told Ms. Morris that he was correcting the inaccurate child support order and was waiting to hear back from the Judge regarding the matter. This statement was not true.

81. The respondent's statement to Ms. Morris was false because he had not contacted the court to rectify the amount. The respondent never corrected this false statement.

82. The respondent knew the statement about the child support order was not true when he made it, or was reckless in failing to determine whether or not the statement was true prior to making it. The respondent's recklessness is demonstrated by the fact that he did not check his records before or after making the statement.

83. The respondent intentionally or knowingly or recklessly told his client that the inaccuracy in the order had been addressed when this was not true. This constitutes conduct involving deceit and/or dishonesty.

84. By such conduct, the respondent violated Colo. RPC 8.4(c).

WHEREFORE, the complainant prays at the conclusion hereof.

### Becker Matter

85. Michelle Becker hired the respondent on November 21, 2002, for a hearing scheduled for November 27, 2002, in her divorce

case. She paid him $200 to handle this hearing. A short while later the respondent's staff informed Ms. Becker that respondent was unavailable as he would be on vacation on that date, and he would call the court and postpone the hearing date. The respondent did not continue the hearing, and he did not appear. Therefore, the respondent did not earn the $200 fee paid to him to attend that hearing.

86. Ms. Becker attended the hearing on November 27, 2002, and temporary arrangements regarding the children were reached.

87. The next court date was set for December 11, 2002. The respondent agreed that he would request a permanent restraining order and present her husband's criminal records to the court in support of this request. However, the respondent failed to take the agreed-upon action. Instead, the respondent extended the temporary restraining order and set another hearing date.

88. Ms. Becker paid $200 to respondent to appear at the next hearing which was held on February 3, 2003, at 8:30 a.m. Ms. Becker also paid the respondent an additional $400. The respondent was not present in the courtroom at 8:30 a.m. Ms. Becker did not hear from him until 9:45 that morning. Ms. Becker sent a letter by certified mail to the respondent on that date requesting a refund of $800 because the respondent missed two of the three court dates he was hired to attend.

89. Ms. Becker verbally requested an accounting. The respondent failed to refund any of the retainer or provide an accounting.

### Claim XI

[A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer—Colo. RPC 1.3]

90. Paragraphs 85 through 89 are incorporated by reference.

91. Colo. RPC 1.3 provides that with reasonable diligence and promptness in representing his client and shall not neglect a legal matter entrusted to that lawyer.

92. The respondent did not attend two of the hearings he was paid to attend.

93. By his lack of reasonable diligence and promptness, the respondent violated Colo. RPC 1.3.

WHEREFORE, the complainant prays at the conclusion hereof.

### Claim XII

[A Lawyer Shall Promptly, or Otherwise As Permitted By Law or Agreement, Deliver to the Client or a Third Person any Funds the Client or Third Person is Entitled to Receive and Upon Request, Render a Full Accounting—Colo. RPC 1.15(b) ]

94. Paragraphs 85 through 89 are incorporated herein by reference.

95. Colo. RPC 1.15(b) provides that upon receiving funds or other property in which a client has an interest, the lawyer shall deliver to the client any funds the client is entitled to receive and, upon request by the client, render a full accounting regarding such property.

96. Although Ms. Becker requested an accounting and refund, the respondent failed to account for the payments made by the client and his use of those funds. The respondent has continued his failure to account for the funds.

97. The respondent did not attend the two hearings for which he was paid $400. The respondent did not earn the funds paid for those appearances and was obligated to refund the $400 he was paid for those appearances.

98. The respondent's conduct violated Colo. RPC 1.15(b).

WHEREFORE, the complainant prays at the conclusion hereof.

### Gancarski Matter

99. Adam Gancarski and his wife consulted the respondent on December 13, 2002, regarding a bankruptcy filing. By December 30, 2002, Mr. Gancarski submitted paperwork to the respondent in order to file a Chapter 7 Bankruptcy. The respondent charged the

Gancarskis $1,000, plus a $40 courier fee needed in order to deliver the bankruptcy petition to assure its filing prior to the end of the year. The Gancarskis paid the respondent $1,040. The respondent filed the bankruptcy case on December 31, 2002.

100. The Gancarskis met with the respondent on February 11, 2003, to make sure everything was ready for a hearing on February 13, 2003. Later in February the court dismissed the case because the respondent had not provided a matrix diskette. The respondent was sent and received a copy of the dismissal order.

101. Upon learning the case was dismissed, Adam Gancarski expressed concern to the respondent. The respondent assured the Gancarskis that he would re-file their case.

102. Subsequently, creditors who had earlier been willing to work with the Gancarskis renewed their payment demands. Additionally, foreclosure procedures had begun on the Gancarskis' home.

103. During March and April, 2003, Mr. Gancarski left no less than 20 messages for the respondent. The respondent received these messages. Although aware of the messages, the respondent did not answer those messages.

104. On April 8, 2003, Mr. Gancarski went to the respondent's office and waited to see the respondent. At that time, the respondent assured Mr. Gancarski that he would contact the creditors and inform them that the case had been refiled. The bankruptcy, in fact, had not been refiled by that date.

105. Mr. Gancarski had an appointment with the respondent on April 21, 2003. The respondent was not present at the time of the scheduled appointment. His secretary stated that he had a court emergency.

106. Also on April 21, 2003, Mr. Gancarski informed the respondent's secretary that he was firing the respondent, and left a letter to the respondent stating this. Later that afternoon, the secretary called Mr. Gancarski and said that the case had been refiled that day and that respondent was unavailable as he had a personal emergency in Kansas.

107. In the April 21, 2003, letter, Mr. Gancarski informed the respondent that his legal services were no longer needed and requested a refund of his $1,040 retainer, return of his file, and an accounting of the respondent's fees.

### Claim XIII

**[A Lawyer Shall Act With Reasonable Diligence And Promptness In Representing A Client And Shall Not Neglect A Legal Matter Entrusted To That Lawyer—Colo. RPC 1.3]**

108. Paragraphs 99 through 107 are incorporated by reference.

109. Colo. RPC 1.3 provides that with reasonable diligence and promptness in representing his client and shall not neglect a legal matter entrusted to that lawyer.

110. The respondent did not re-file the bankruptcy petition for several weeks after requested and paid to do so.

111. By his lack of reasonable diligence and promptness regarding the Gancarskis' bankruptcy case, the respondent violated Colo. RPC 1.3.

WHEREFORE, complainant prays at the conclusion hereof.

### Claim XIV

**[Upon Termination, a Lawyer Shall Take Steps to Protect a Client's Interest and Surrender Papers and Property to the Client—Colo. RPC 1.16(d) ]**

112. Paragraphs 99 through 107 are incorporated herein as if fully set forth.

113. Colo. RPC 1.16(d) provides that upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled, and refunding any advance payment of fee that had not been earned.

114. Mr. Gancarski terminated the respondent's representation in April, 2003. At that time the respondent was obligated to return all unearned funds.

115. The respondent failed to return to the client any portion of the $1,040 retainer, not all of which had been earned.

116. By such conduct, the respondent violated Colo. RPC 1.16(d).

WHEREFORE, the people pray that the respondent be found to have engaged in misconduct under C.R.C.P. 251.5 and the Colorado Rules of Professional Conduct as specified above; that the respondent be appropriately disciplined for such misconduct; that the respondent be required to refund fees to the clients and/or the Client Protection Fund pursuant to C.R.C.P. 252.14(b), and/or provide restitution to third parties; that the respondent be required to return client files (or other client property); that the respondent be required to take any other remedial action appropriate under the circumstances; and that the respondent be assessed the costs of this proceeding.