The PEOPLE of the State of
Colorado, Complainant,

v.

Sylvian Ross ROYBAL, Attorney–
Respondent.

Nos. 97SA240, 97SA358.

Supreme Court of Colorado,
En Banc.

Dec. 15, 1997.

Linda Donnelly, Disciplinary Counsel,
James C. Coyle, Assistant Disciplinary Counsel, Denver, for Complainant.

Sylvian Ross Roybal, Pro Se.

PER CURIAM.

We consolidate two lawyer disciplinary proceedings in one opinion and order. In No. 97SA240, a hearing panel of the supreme court grievance committee approved the findings and recommendation of a hearing board that the respondent be suspended for one year and one day and be required to pay restitution as a condition of reinstatement. The same hearing panel in No. 97SA358 approved the findings and recommendation of a

second hearing board that the respondent be disbarred and be required to demonstrate prior to any readmission payment of certain additional restitution. We accept the hearing panel's findings and recommendations and order that the respondent be disbarred.

I.

The respondent was admitted to practice law in Colorado in 1973. He failed to answer either formal complaint filed in the cases before us and therefore the facts and allegations contained in the complaints were deemed admitted. See C.R.C.P. 241.13(b); *People v. Pierson*, 917 P.2d 275, 275 (Colo. 1996). Although he attended the hearing in No. 97SA240, he did not appear at the hearing in No. 97SA358. Based on the default and the evidence presented, the hearing boards found that the following had been established by clear and convincing evidence.

II.   No. 97SA240—Powers

Vivian Powers hired the respondent on March 1, 1984 to represent her in a slip-and-fall personal injury case. She fell into an unmarked hole in August 1983 at Crossroads Mall in Boulder.

Powers and the respondent entered into a written contingent fee agreement. At the time of the accident, Powers was working for the United States Department of Agriculture, and as a result she received over $130,000 in federal workers' compensation benefits. She notified the respondent of the federal Office of Workers' Compensation (OWC) subrogation rights.

The respondent filed a complaint in Boulder County District Court on March 21, 1985, against Al Cohen Construction Company and Crossroads Mall Merchant's Association. He amended the complaint on June 11, 1985, adding Macerich Crossroads Associates as a defendant. Then on November 23, 1985, he amended the complaint again and added Flatiron Paving Company and Ridge Erection Company as defendants.

The respondent did not request either interest or costs in the complaints filed on behalf of Powers. In addition, he failed to respond to motions for summary judgment

and motions for attorney fees filed by Ridge Erection Company and Flatiron Paving Company. The trial court therefore dismissed the claims against these two defendants and awarded attorney fees and costs against the respondent and his client. The respondent challenged the award of costs and fees on the ground that he changed the location of his office and had not received the motion; however, he had not notified the court of any change of address. Flatiron agreed to satisfaction without payment, but the respondent confessed judgment to Ridge Erection in the amount of $3,363.54. The respondent did not inform Powers of these events.

The case went to trial in January 1987, and the jury awarded Powers $100,000 plus interest and costs. The respondent did not answer the defendants' challenge to the award of any interest or costs because the complaint did not ask for them. The matter was settled in February 1987 for $107,500. When Powers signed the settlement agreement, she was unaware of her right to receive costs and interest had they been pleaded. The hearing board found that she would have been entitled to an additional $26,821.58 on the jury verdict had interest and costs not been waived.

To make matters worse, the respondent failed to keep OWC advised of the progress of the case. He falsely told his client that he was trying to contact OWC and that they were not returning his calls.

In March 1987, the respondent disbursed the settlement funds to himself and his client in accordance with the contingent fee agreement. He did not notify the OWC of either the stipulated judgment or the payment of $107,500. During the summer of 1987, the OWC Regional Solicitor's Office began calling the respondent about the case, but the respondent did not return those calls.

The OWC eventually learned of the settlement and on August 13, 1987, a representative of the Regional Solicitor's Office wrote the respondent to remind him that he had failed to provide the OWC with the required itemized list of court costs necessary for computation of the subrogation claim. Hearing nothing, the OWC provided the respondent with a "statement of recovery"

identifying the OWC's subrogation claim as $38,048.25. Had the respondent submitted court costs, an accurate attorney fee amount, and an itemization of the medical expenses actually paid by his client to the OWC, the subrogation claim would have been almost $11,000 less. The respondent was directed to forward a check in the amount of $38,048.25 to the OWC. He did not reply to this request nor did he notify his client of the OWC claim.

In August 1987, Powers discovered that she should have received costs and interest in the lawsuit, so she sent the respondent three certified letters asking for an explanation. The respondent did not answer the letters.

On May 3, 1988, the OWC wrote directly to Powers and told her that the respondent had not acknowledged their prior letters, and that she was required to pay $38,048.25 by May 23 to avoid a collection action. Another lawyer then provided the requested information on Powers's behalf, and managed to reduce the amount to $27,399.76, which Powers then paid.

In January 1989, Powers's new lawyer filed a malpractice action against the respondent. At the time of trial in August 1989, the respondent represented that he had thoroughly advised his former client of his failure to plead interest and costs before she agreed to settle; and that he was in regular communication with the OWC while the personal injury action was pending; and that he had kept Powers regularly informed of this communication. Those representations were not true.

On August 11, 1989, Powers was awarded $26,821.58 in damages for lost interest and costs, less the respondent's one-third contingent fee, for a total award of $17,881.05 plus costs incurred in the malpractice action.

The hearing board summarized the respondent's misconduct as follows. He failed to communicate appropriately with his client about the status of her case; he did not respond to various motions and orders filed in the action resulting in the assessment of sanctions against him; he failed to request interest and costs in the personal injury ac-

tion; he failed to protect his client's interests; and he withdrew from employment at the conclusion of the personal injury case without taking reasonable steps to insure that his client was not prejudiced by the OWC subrogation claim. Because the misconduct in the Powers case occurred before the effective date of the Rules of Professional Conduct, January 1, 1993, the respondent violated DR 1–102(A)(5) (engaging in conduct prejudicial to the administration of justice); DR 2–110(A)(2) (withdrawing from employment without taking steps to avoid foreseeable prejudice to the rights of the client); DR 6–101(A)(3) (neglecting a legal matter); DR 7–101(A)(1) (intentionally failing to seek the lawful objectives of the lawyer's client); and DR 7–101(A)(3) (intentionally prejudicing or damaging the client). Because he failed to respond to reasonable requests for information during the investigation of the disciplinary case, the respondent also violated C.R.C.P. 241.6(7).

Moreover, the respondent maintained only one checking account for his law office. This account was not an interest-bearing account, *see* Colo. RPC 1.15(d), nor was it a COLTAF account, *see* Colo. RPC 1.15(e)(2). The respondent used this account for some business expenses, personal expenses, and also as a trust account. When he deposited Powers's settlement funds into this account he commingled her funds with his own.

In January 1987, the respondent wrote an insufficient funds check to an expert, despite the fact that his client had paid him the expert fee. He thereby at least negligently misappropriated Powers's funds designated for the expert. The respondent finally paid the expert two-and-a-half years later on the day before the malpractice trial started.

The hearing board concluded that the conduct in the foregoing two paragraphs violated DR 1–102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation); DR 1–102(A)(6) (engaging in conduct that adversely reflects on the lawyer's fitness to practice law); and DR 9–102(A) (failing to deposit client funds in one or more identifiable interest-bearing depository accounts).

### III. No. 97SA358

#### A. Leggions

Delbert G. Leggions was charged with first-degree sexual assault arising out of the alleged assault of his girlfriend in May 1993. Although Leggions was originally represented by the public defender's office, he retained the respondent to represent him pursuant to a written fee agreement.

The victim alleged that Leggions forced her to engage in anal sex for several hours. Leggions denied this. The victim had been examined at a hospital with the use of a rape kit following her complaint, but no physical evidence supporting the victim's allegations was found.

Nevertheless, the respondent did not hire any investigators, did not talk to the medical examiner, did not review the medical report or rape kit results, did not investigate the victim, and did not talk to the defendant's and victim's neighbors.

Because Leggions had a 1991 felony menacing conviction (involving the same victim), the respondent and his client decided that Leggions would not testify. Leggions had been in pretrial confinement since May 1993, and he asked the respondent to get him civilian clothes for his trial. The respondent failed to do so, and Leggions sat through his trial before a jury in orange prison garb.

The respondent did not subpoena the medical examiner or obtain the medical report for the trial. When he tried to cross-examine the victim about the absence of any evidence of semen obtained during the medical examination, the prosecutor's objection was sustained. The jury never knew of the exculpatory nature of the medical test results, which might have undermined the credibility of the victim's testimony about a two or three-hour anal sex assault.

The respondent cross-examined the victim at the trial, but presented no other evidence or witnesses of his own. He did not object when the victim spontaneously testified about Leggion's prior conviction, and also failed to object when the prosecutor during closing argument arguably made a reference to the defendant's failure to testify. Leggions was

convicted of first-degree sexual assault and sentenced to ten years in the Colorado Department of Corrections.

Another lawyer, subsequently appointed to represent Leggions, filed a Crim. P. 35(c) motion for postconviction relief based on ineffective assistance of counsel. The district court found that the respondent's failure to present the evidence found in the rape examination "fell below an objective standard of reasonableness" using "prevailing professional standards." *See Davis v. People*, 871 P.2d 769, 772 (Colo.1994). The respondent was also unaware of section 16–3–309(5), 6 C.R.S. (1997), which permits the introduction into evidence of "[a]ny report or copy thereof or the findings of the criminalistics laboratory" without the testimony of the person performing the test.

Nevertheless, the district court determined that Leggions was not sufficiently prejudiced to create a reasonable probability that "the result of the proceeding would have been different" under *Strickland v. Washington*, 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). At the time of the hearing in this case, that ruling was on appeal. More recently, the court of appeals reversed the district court's order, vacated Leggions's conviction, and ordered a new trial based on ineffective assistance of counsel. *See People v. Leggions*, No. 94CA0126, slip op. at 3 (Colo.App. Oct. 9, 1997) (not selected for publication).[1]

The hearing board concluded that the respondent's conduct in the criminal case violated Colo. RPC 1.1 (failing to provide competent representation to a client); Colo. RPC 1.3 (neglecting a legal matter); and Colo. RPC 8.4(h) (engaging in conduct adversely reflecting on fitness to practice).

### B. Huntley

On February 3, 1996, Louise Huntley hired the respondent to handle an employment related disability claim against her employer and to defend against the employer's efforts to force her to return to work before she reached maximum recovery. She paid the respondent a $1,500 advance fee that she anticipated he would draw upon as he performed the work. The respondent claims that he did not agree to handle Huntley's disability claim and that the $1,500 was compensation for a preliminary review of her file, assistance with a complaint Huntley had herself filed with the EEOC, and for referring her to other counsel. There was no fee agreement regarding the respondent's representation or any documentation with respect to a referral fee.

The respondent told Huntley that he planned to have another lawyer handle the pretrial preparation of the case and he would handle the trial itself. The respondent never told her how to contact this other lawyer, however, and he failed to notify her employer of his or anyone else's representation of Huntley.

In December 1995, Huntley was examined by a company physician who pronounced her fit and able to return to work. To the contrary, her own doctor concluded that she was totally disabled. Because of the divergence between these expert medical opinions, Huntley's employer required her to submit to further medical evaluations. She told the respondent that she was too weak to attend one of these evaluations, but the respondent failed to notify her employer to delay or reschedule the appointment. He also failed to contact either Huntley or her doctor for medical documentation substantiating the disability claim. In March 1996, Huntley's employer sent her letters regarding independent medical examinations, and on March 26 told her that if she did not return to work by April 15, 1996, she would be terminated. During this time, Huntley's efforts to contact the respondent were unsuccessful.

When she went to his office to confront him, the respondent told her that he had not been able to find another lawyer to handle the pretrial matters, but that he was still trying. He never did find another lawyer or provide any benefit to his client in any way. Huntley's employer fired her on April 15,

---

1. We note that the standard against which we measure respondent's conduct in the context of this grievance is not the same as the standard courts use to determine whether his representation of a client comprises ineffective assistance.

1996, and denied her disability claim due to her failure to comply with the employer's procedures regarding such claims. She had sixty days to appeal the denial, and finally met the respondent at a restaurant where he wrote out an appeal for her to type and submit to her employer. The appeal was filed on July 12, 1996 outside the sixty day timeframe. It was denied on January 29, 1997, again for her failure to comply with the employer's procedural requirements. Afterwards, the respondent did not reply to Huntley's demands for a refund of the $1,500 advance fee, and he has no records documenting any work performed for her. He continues to contend that the $1,500 was a referral fee, which he earned.

The hearing board found that the respondent charged $1,500 for a minimal amount of legal work from which Huntley received no benefit. The foregoing conduct violated Colo. RPC 1.1 (failing to provide competent representation to a client); Colo. RPC 1.3 (neglecting a legal matter); Colo. RPC 1.4(a) (failing to communicate appropriately with a client); Colo. RPC 1.5(a) (charging an unreasonable fee); Colo. RPC 1.5(b) (failing to explain the basis or rate of the fee); Colo. RPC 1.5(e) (charging a referral fee which is prohibited); and Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

### C. Wilson

In October 1996, Robert Wilson retained the respondent to represent him in a traffic matter in Edgewater, Colorado, and paid him $250. Wilson explained that he was on parole and thus needed to postpone the traffic case for three months. The respondent indicated he would take care of it. The respondent did not, however, appear on the date of the summons in December 1996. He did draft and sign an entry of appearance, which bore the caption of the United States District Court and not the Edgewater municipal court. The respondent did not establish any kind of internal reminder for the case and did nothing further on it.

When Wilson failed to appear on December 12, 1996, a warrant issued for his arrest. He was arrested in March 1997 and his parole was revoked. The respondent received notice of his client's revocation hearing and agreed to appear. The respondent did not in fact appear. Wilson's wife demanded a refund of the unearned $250, but the respondent did not call her back or offer a refund until after the request for investigation was filed against him. As of the date of the hearing, he had not refunded the $250. The hearing board concluded that the "respondent neglected Mr. Wilson's legal matter and effectively abandoned his client, failed to communicate with or provide competent representation to Mr. Wilson, and converted Mr. Wilson's $250 by promising to do legal work which the respondent never did." He therefore violated Colo. RPC 1.1 (failing to provide competent representation to a client); Colo. RPC 1.3 (neglecting a legal matter); Colo. RPC 1.4(a) (failing to communicate appropriately with a client); and Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit or misrepresentation).

### IV.

The hearing panel in No. 97SA240 accepted the hearing board's recommendation that the respondent be suspended for one year and one day and be ordered to make specified restitution. In No. 97SA358 the hearing panel approved the findings and recommendation that the respondent be disbarred and be required to make additional restitution as a condition of any application for readmission. Neither the respondent nor the complainant has excepted to the hearing panel's actions. Because we conclude that the findings of misconduct in No. 97SA358 are dispositive of the ultimate sanction to be imposed, we limit the following discussion to that case.

Under the ABA *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) (ABA *Standards* ), in the absence of mitigating factors, disbarment is generally appropriate when:

(a) a lawyer abandons the practice and causes serious or potentially serious injury to a client; or

(b) a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c) a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

ABA *Standards* 4.41. In addition, ABA *Standards* 4.11 provides that "[d]isbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client."

The hearing board determined in No. 97SA358 that "[i]n the Wilson matter, the respondent accepted a $250 retainer and thereafter effectively abandoned Mr. Wilson and his legal matter. The respondent's conduct in failing to perform legal services for which he was paid is tantamount to knowing misappropriation of client funds." Moreover, "[t]he respondent's combined failures in all three cases [Leggions, Huntley, and Wilson] demonstrate an extreme indifference to the welfare of his clients and the status of their cases." We agree.

We have found disbarment appropriate when a lawyer effectively abandons his clients and thereby misappropriates unearned attorney fees. *See, e.g., People v. Kuntz,* 942 P.2d 1206, 1209 (Colo.1997) (lawyer disbarred who accepted legal fees in eight matters, performed little or no services, and abandoned clients while misappropriating their money); *People v. Townshend,* 933 P.2d 1327, 1329 (Colo.1997) (lawyer disbarred who accepted advance fees from two clients then effectively abandoned them, and failed to account for or return the unearned retainers she collected, thereby converting those funds to her own use); *People v. Steinman,* 930 P.2d 596, 599–600 (Colo.1997) (lawyer disbarred who accepted fees from clients and then abandoned them while keeping their money and causing serious harm); *People v. Tucker,* 904 P.2d 1321, 1325 (Colo.1995) (lawyer disbarred who abandoned her clients while continuing to collect attorney fees for work that would not be performed).

The hearing board found no mitigating factors in No. 97SA358 since the respondent did not appear or offer any evidence at the hearing. In aggravation, the board found that the respondent had prior discipline in the form of a private censure in 1985, *see* ABA *Standards* 9.22(a); he had a dishonest or selfish motive, *see id.* at 9.22(b); he had engaged in a pattern of misconduct, *see id.* at 9.22(c), and multiple offenses, *see id.* at 9.22(d); he refused to acknowledge the wrongful nature of his conduct, *see id.* at 9.22(g); he had substantial experience in the practice of law, *see id.* at 9.22(i); and he exhibited indifference to making restitution, *see id.* at 9.22(j).

Taking all of this into account, we agree that disbarment is the appropriate disciplinary sanction. Accordingly, we accept the hearing panel's and hearing boards' findings and recommendations in both cases, and we order that the respondent be disbarred, with readmission conditioned on the restitution below.

## V.

It is hereby ordered that Sylvian Ross Roybal be disbarred and that his name be stricken from the list of attorneys authorized to practice before this court, effective thirty days after this opinion is issued. The respondent is also ordered to pay the combined costs of these proceedings in the amount of $587.43 within thirty days after the announcement of this opinion to the Supreme Court Grievance Committee, 600 Seventeenth Street, Suite 920–S, Denver, Colorado 80202. Should the respondent ever seek readmission, he will be required to demonstrate by clear and convincing evidence that he has made the following restitution:

(1) $19,381.05 (consisting of the $17,881.05 malpractice judgment plus $1,500 in costs), plus statutory interest from August 11, 1989, until paid, to Vivian Powers;

(2) $1,500 plus statutory interest from February 3, 1996, to Louise Huntley; and

(3) $250 plus statutory interest from October 31, 1996, to Robert Wilson.