**The PEOPLE of the State of Colorado, Complainant**

v.

**Gregory S. TOLENTINO, Respondent.**

**Nos. 11PDJ085, 12PDJ028.**

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Aug. 16, 2012.

On July 23, 2012, the Presiding Disciplinary Judge ("the Court") held a sanctions hearing pursuant to C.R.C.P. 251.15(b). ADAM J. ESPINOSA appeared on behalf of the Office of Attorney Regulation Counsel ("the People"). GREGORY S. TOLENTINO ("Respondent") did not appear, nor did counsel appear on his behalf. The Court now issues the following "Opinion and Decision Imposing Sanctions Pursuant to C.R.C.P. 251.19(c)."

## OPINION AND DECISION IMPOSING SANCTIONS PURSUANT TO C.R.C.P. 251.19(c)

### I. *SUMMARY*

Disbarment is typically appropriate when a lawyer abandons the practice of law, seriously injuring his or her clients. Disbarment is also generally warranted when, in the absence of significant mitigating factors, a lawyer knowingly converts client property and causes injury or potential injury to a client. In this case, Respondent abandoned four clients, converted funds in three matters, and failed to cooperate in the disciplinary proceedings. After considering the nature of Respondent's misconduct, as well as the significant aggravating factors, the Court finds the appropriate sanction for Respondent's misconduct is disbarment.

### II. *PROCEDURAL HISTORY*

The People filed a petition requesting the immediate suspension of Respondent on November 11, 2011. The Court issued a report on December 14, 2011, recommending Respondent be immediately suspended, and after reviewing the recommendation, the Colorado Supreme Court immediately suspended Respondent on December 19, 2011.

The People filed a complaint in case number 11 PDJ085 on February 10, 2012. Respondent failed to answer the complaint, and the Court granted a motion for default on April 23, 2012. Upon entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[1]

On March 30, 2012, the People filed another complaint against Respondent in case number 12PDJ028. Respondent again failed to answer the complaint, and on July 10, 2012, the Court granted a motion for default.

The Court consolidated the two matters on July 10, 2012. At the sanctions hearing on July 23, 2012, the Court heard testimony from Dean Schlader, James Spoja, W.S.,[2] and Dianna Perkins.[3]

### III. *ESTABLISHED FACTS AND RULE VIOLATIONS*

The Court hereby adopts and incorporates by reference the factual background of this case as fully detailed in the admitted complaints.[4] Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on May 18, 2009, under attorney registration number 40913.[5] He is thus subject to the Court's jurisdiction in these disciplinary proceedings.[6]

As established by the Court's orders entering default, Respondent engaged in extensive misconduct in five separate matters. A summary of that misconduct follows.

- *The Fett Matter:* On April 4, 2011, Brett Fett ("Fett") hired Respondent to represent him in an employment matter. Fett paid Respondent a $2,000.00 retainer and agreed to an hourly rate of $110.00 plus a twenty-

---

1. *See People v. Richards*, 748 P.2d 341, 346 (Colo. 1987); C.R.C.P. 251.15(b).

2. At the witness's request, the Court will refer to him by initials only.

3. Dean Schlader and Dianna Perkins appeared by telephone.

4. *See* the People's complaints for further detailed findings of fact.

5. Respondent's registered business address is 600 Grant Street, Suite 201, Denver, Colorado 80203. His registered home address is 1975 Grant Street #209, Denver, Colorado 80203.

6. *See* C.R.C.P. 251.1(b).

percent contingency fee on any recovery. From April 2011 through June 2011, Respondent sent Fett invoices totaling $5,841.60. Fett paid all invoices promptly. Respondent told Fett that he was conducting legal research and had drafted a thirty-page complaint in Fett's case; however, Fett never received a copy of the complaint, nor did Respondent ever file the complaint on Fett's behalf. Fett tried to contact Respondent, but did not hear from him after July 11, 2012. Fett retained new counsel and requested that Respondent return his file, but Respondent did not do so. Through this conduct, Respondent violated Colo. RPC 1.3 (failure to act with reasonable diligence and promptness in representing a client); Colo. RPC 1.4(a)(2)-(4) (failure to communicate reasonably with a client); and Colo. RPC 1.16(d) (failure to surrender a client's papers upon termination of the representation).

- *The Blair Matter:* Susan Blair ("Blair") hired Respondent in August 2011 to assist her in negotiating a repayment plan with her insurance company. The insurance company alleged that Blair had been overpaid and threatened to file a lawsuit against her if she did not return the overpayment. At her initial meeting with Respondent, Blair gave him her original documents and a check for $2,000.00 as a retainer. Respondent did not provide Blair with written documentation of the fees he intended to charge. Respondent deposited Blair's $2,000.00 check into his COLTAF account on August 8, 2011. Four days later, Respondent's COLTAF account dropped below $1,222.00. Respondent never provided Blair with an accounting of the funds transferred. After a final telephone conversation on August 22, 2011, Respondent stopped responding to Blair. Blair mailed a letter to Respondent terminating their relationship on August 31, 2010, and retained new counsel shortly thereafter. Blair committed suicide on December 17, 2011. Dean Schlader ("Schlader"), Blair's brother, testified

that Respondent never completed the legal work Blair hired him to perform, nor did he return the $2,000.00 retainer fee. In addition, Respondent failed to respond to inquiries from the People regarding Blair's request for investigation. Through these actions, Respondent violated Colo. RPC 1.3; Colo. RPC 1.4(a)(3)-(4); Colo. RPC 1.5(b) (failure to provide written communication of the basis or rate of the fee); Colo. RPC 1.15(a) (failure to keep client or third-party funds separate from the lawyer's own property and negligent conversion of client or third-party funds); Colo. RPC 1.15(b) (failure to return client property and to provide an accounting); Colo. RPC 1.16(d); Colo. RPC 8.1(b) (failure to respond to requests from disciplinary authority); and Colo. RPC 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

- *The Holdridge Matter:* Mark Holdridge ("Holdridge") hired Respondent in April 2011 to assist him in a claim against a pawnbroker. The pawnbroker wrote down an incorrect serial number from a bicycle Holdridge pawned, resulting in Holdridge being charged with a Class 6 felony, Pawnbroker Violation. Though the mistake was discovered and the felony charges were dropped, Holdridge believed he had a civil rights claim against the pawnbroker and retained Respondent as counsel in the matter. Respondent entered into a written contingency fee agreement with Holdridge, agreeing to pursue claims against the pawnbroker. In May 2011, Respondent emailed Holdridge stating that he had received a letter from opposing counsel regarding negotiations. However, despite his attempts to contact Respondent, Holdridge did not hear from him again. Holdridge sent Respondent a letter by certified mail terminating their relationship and directing Respondent to return his files. Respondent neither responded to the letter from Holdridge nor returned the requested files. Holdridge asserts that he has been unable

to retain new counsel in this matter because of the existing contingency fee agreement with Respondent and because he does not have his original documents. In addition, Respondent has not responded to requests from the People regarding their investigation. In the course of this representation, Respondent violated Colo. RPC 1.3; Colo. RPC 1.4(a)(3)-(4); Colo. RPC 1.16(d); and Colo. RPC 8.1(b).

- *The W.S. Matter:* W.S. entered into a law partnership agreement with Respondent on August 9, 2010. W.S. and Respondent mutually agreed to dissolve the partnership on February 25, 2011. According to the written dissolution agreement, Respondent was to assume all liabilities of the firm, including the office lease. Respondent also agreed to pay W.S. $5,918.00 plus a forty percent share of the gross revenue in an ongoing personal injury representation. Respondent paid W.S. half of the $5,918.00 and signed a promissory note agreeing to pay the remaining $2,959.00 by August 11, 2011. The pending personal injury matter settled for $25,000.00 in April 2011; however, Respondent did not pay W.S. his share of the revenue as agreed. In addition, Respondent did not honor his promise to pay W.S. the remaining $2,959.00. Respondent stopped communicating with W.S. in July 2011 and thereafter defaulted on the law office lease. Respondent has not responded to requests from the People regarding this investigation. Through this conduct, Respondent violated Colo. RPC 1.15(c) (failure to distribute settlement funds); Colo. RPC 8.1(b); and Colo. RPC 8.4(c).

- *The Perkins Matter:* Dianna Perkins ("Perkins") hired Respondent on behalf of her parents at the end of April 2011. Respondent agreed to apply for benefits with the U.S. Department of Labor and the U.S. Veterans Administration in connection with Perkins's father's longterm exposure to asbestos. Respondent entered into a written contingency fee agreement with Perkins and collected a $250.00 cost retainer. Respondent deposited the cost retainer into his COLTAF account on May 11, 2011. While Respondent maintained infrequent communication with Perkins for several months, he stopped communicating with the Perkins family in early August 2011. Respondent did not apply for benefits on behalf of Perkins's father, he did not provide an accounting or evidence of costs associated with his work, and he did not return the $250.00 cost retainer. Additionally, Respondent failed to respond to requests from the People regarding the investigation into this matter. Through the actions described above, Respondent violated Colo. RPC 1.3; Colo. RPC 1.4(a)(3)-(4); Colo. RPC 1.15(a); Colo. RPC 8.1(b); and Colo. RPC 8.4(c).

## IV. SANCTIONS

The American Bar Association *Standards for Imposing Lawyer Sanctions* ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[7] In imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, the actual or potential injury caused by the lawyer's misconduct, and the existence of aggravating and mitigating evidence pursuant to ABA *Standard* 3.0.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

▇▇▇▇ *Duty:* Respondent violated a duty to his clients by failing to keep client funds separate from his own property, failing to act with reasonable diligence and promptness in representing his clients, failing to reasonably communicate with clients, and failing to communicate the basis of his fee and expenses in writing.[8] Respondent violated duties owed to the public by refusing to respond to requests from the People and knowingly con-

---

7. *See In re Roose*, 69 P.3d 43, 46–47 (Colo.2003).

8. *See* ABA *Standard* 4.0.

verting his former law partner's funds.[9] Finally, by failing to take reasonable steps to protect his clients' interests upon termination, failing to respond to disciplinary counsel, and knowingly engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation, Respondent violated duties owed as a legal professional.[10]

*Mental State:* The PDJ concludes that Respondent's mental state was knowing with respect to each allegation of misconduct.

*Injury:* Respondent's conduct caused actual and serious injury to each of his clients and his former law partner. When Respondent abandoned four of his clients and their legal matters, he delayed their cases, hindering the client's effort to obtain relief. Specifically, in the Blair matter, by failing to take any action in Blair's legal matter and failing to keep her informed about her case, Respondent caused Blair undue stress. Her brother, Schlader, asserts that this stress contributed significantly to his sister's decision to take her life.

Respondent caused financial harm to his clients and former law partner by converting funds. For example, in the W.S. matter, by failing to distribute W.S.'s share of the personal injury settlement, and then later defaulting on their office lease, he caused W.S. significant financial harm.

Finally, Respondent injured the integrity of the legal profession by tarnishing his clients' and the public's confidence in attorneys and the legal profession.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances include any considerations or factors that may justify an increase in the degree of discipline to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[11] The Court considered evidence of the following aggravating and mitigating circumstances in deciding the appropriate sanction. Because Respondent did not partici-

pate in the disciplinary proceeding, the Court is aware of only two mitigating circumstances.

*Dishonest and Selfish Motive—9.22(b):* In the Blair, W.S., and Perkins matters, Respondent acted with a dishonest and selfish motive by knowingly converting funds.

*Pattern of Misconduct—9.22(c):* Respondent neglected and abandoned several clients and knowingly converted funds belonging to clients and his former law partner in three matters.

*Multiple Offenses—9.22(d):* Respondent engaged in numerous rule violations, ranging from inadequate communication to conversion.

*Failure to Comply with Disciplinary Agency—9.22(e):* Respondent failed to respond to requests for information from the People in four matters.

*Indifference to Making Restitution—9.22(j):* Respondent has not made restitution to those affected by his misconduct.

*Absence of Prior Disciplinary Record—9.32(a):* Respondent does not have a prior disciplinary record.

*Inexperience in the Practice of Law—9.32(f):* Respondent was admitted to the bar in 2009, and therefore he does not have substantial experience in the practice of law.

### Analysis Under ABA *Standards* and Colorado Case Law

Under the ABA *Standards,* the presumptive sanction for Respondent's misconduct is disbarment. ABA *Standard* 4.11 provides that disbarment is appropriate when a lawyer knowingly converts client property and thereby causes injury or potential injury to the client. Disbarment is also generally appropriate when a lawyer abandons his practice and in turn causes serious or potentially serious injury to a client.[12] The ABA *Standards* provide that when there are multiple instances of misconduct, the ultimate sanc-

---

9. *See* ABA *Standard* 5.0.

10. *See* ABA *Standard* 7.0.

11. *See* ABA *Standards* 9.21 & 9.31.

12. ABA *Standard* 4.41.

tion should be at least consistent with the most serious instance of misconduct.[13]

Colorado case law supports disbarment as the appropriate sanction for the knowing conversion of client funds.[14] For example, in *People v. Kuntz*, the Colorado Supreme Court determined disbarment was appropriate when a lawyer accepted legal fees from several clients, performed little to no work on their cases, and then abandoned the clients without returning their funds.[15] Similarly, in *In re Stevenson*, a lawyer was disbarred after abandoning his client and misappropriating funds.[16] The Colorado Supreme Court noted in *Stevenson* that the lawyer's failure to participate in the disciplinary proceeding underscored their decision that disbarment was appropriate.[17]

## V. *CONCLUSION*

Respondent abandoned several clients, converted funds, and failed to cooperate in this disciplinary proceeding. Admission to the Colorado bar obligates attorneys to adhere to high moral and ethical standards. Through his numerous instances of misconduct, Respondent ignored those standards, injuring his clients, the public, and the legal profession. In order to protect the public, and in light of the serious nature of Respondent's misconduct, the Court determines that Respondent should be disbarred.

## VI. *ORDER*

The Court therefore **ORDERS**:

1. **GREGORY S. TOLENTINO**, attorney registration number 40913, is **DISBARRED**. The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment." [18]

2. Respondent **SHALL** file any post-hearing motion or application for stay pending appeal with the Court **on or before September 6, 2012**. No extensions of time will be granted. If Respondent files a post-hearing motion or an application for stay pending appeal, the People **SHALL** file any response thereto within seven days, unless otherwise ordered by the Court.

3. Respondent **SHALL** pay the costs of these proceedings. The People **SHALL** submit a "Statement of Costs" within fourteen days from the date of this order. Respondent's response to the People's statement, if any, must be filed no later than fourteen days thereafter.

4. Respondent **SHALL**, to the extent applicable, comply with C.R.C.P. 251.28(a)-(c) and file with the Court, within fourteen days of the issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d).

---

**13.** *See* ABA *Standards* § II at 7.

**14.** *In re Haines*, 177 P.3d 1239, 1250 (Colo. 2008); *see also In re Cleland*, 2 P.3d 700, 703 (Colo.2000) (determining that knowing misappropriation of client funds warrants disbarment), *People v. Varallo*, 913 P.2d 1, 10–11 (Colo.1996) (holding that disbarment is the appropriate sanction for knowing conversion of client funds, regardless of whether the lawyer intended to permanently deprive the client of those funds).

**15.** 942 P.2d 1206, 1208 (Colo.1997); *see also People v. Roybal*, 949 P.2d 993 (Colo.1997) (disbarring attorney for abandoning clients, failing to return unearned fees, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

**16.** 979 P.2d 1043, 1044 (Colo.1999).

**17.** *Id.* at 1045.

**18.** In general, an order and notice of sanction will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.