The **PEOPLE** of the State of Colorado, Complainant,

v.

Susan **LINDLEY**, Respondent.

No. 14PDJ056.

Office of the Presiding Disciplinary Judge of the Supreme Court of Colorado.

Jan. 26, 2015.

---

OPINION AND DECISION IMPOSING
SANCTIONS PURSUANT TO
C.R.C.P. 251.19(c)

## I. SUMMARY

 Respondent abandoned three clients, converted funds, and then failed to partici-

pate in the resulting disciplinary proceedings. Absent significant mitigating factors, disbarment is generally appropriate when an attorney knowingly converts client funds or abandons clients, causing them serious injury or potential injury. The Court finds that under the circumstances, the appropriate sanction is disbarment.

## II. PROCEDURAL HISTORY

The People filed their complaint on July 14, 2014.[2] Respondent failed to answer the complaint, and the Court granted the People's motion for default on September 16, 2014. Upon the entry of default, the Court deems all facts set forth in the complaint admitted and all rule violations established by clear and convincing evidence.[3] At the sanctions hearing on December 3, 2014, the People called Michael John Griffiths and Eric Ursich as witnesses and introduced exhibits 1–4.

## III. ESTABLISHED FACTS AND RULE VIOLATIONS

The Court hereby adopts and incorporates by reference the factual background of this case, as fully detailed in the admitted complaint.[4] Respondent took the oath of admission and was admitted to the bar of the Colorado Supreme Court on November 30, 1990, under attorney registration number 20135. She is thus subject to the Court's jurisdiction in these disciplinary proceedings.[5]

### Bruggeman Matter

 Joseph Bruggeman retained Respondent to assist him with tax matters. During that representation, Bruggeman passed away. In August 2012, Respondent was retained by the personal representative of

---

2. On that date, the People sent the complaint by certified mail to Respondent's registered business address of 1185 Bear Mountain Drive, Unit B, Boulder, Colorado 80305.

3. See C.R.C.P. 251.15(b); People v. Richards, 748 P.2d 341, 346 (Colo.1987).

4. See the People's complaint for further detailed findings of fact.

5. See C.R.C.P. 251.1(b).

Bruggeman's estate, Janet Yang. Yang asked Respondent to provide a list of outstanding issues with regard to Bruggeman's estate, which she did. Yang then instructed Respondent to finalize a tax dispute with the California Franchise Tax Board and to prepare and file Bruggeman's past-due tax returns. On August 28, 2012, Respondent asked Yang for a $3,775.00 retainer to complete this work. Yang promptly paid Respondent. Respondent deposited this money into her COLTAF account on September 5, 2012, and then sent Yang an itemized invoice for $2,150.00 for work she had done before Bruggeman's passing. Yang also paid this bill.

In late September, Yang emailed Respondent and expressed her concern about Respondent's delay in completing the tax returns. Respondent replied, indicating she was gathering information concerning attorney's fees charged by several law firms that Bruggeman had retained to assist him in trust litigation. Respondent told Yang that the attorney's fees for the trust litigation were deductible. According to Respondent, the delay was caused by the law firms, since she needed information from the firms to complete the tax returns. Yang never received an invoice from Respondent for this work.

Yang subsequently asked Respondent on several occasions when the tax returns would be complete. Respondent continually maintained that she was working on them and would soon have them completed. Yang then retained attorney Jane Paddison to take over the estate work.

In October, Paddison confirmed that Respondent was working on Bruggeman's tax returns and handling the California Tax Board matter. On October 15, 2012, the balance in Respondent's COLTAF account was $37.50. As of this date Respondent still had not, however, completed the tax returns or provided any proof of her communications with the California Tax Board. On December 5, Paddison emailed Respondent, on behalf of Yang, terminating Respondent's services because of her lack of communication and the considerable delay in preparing the tax returns. Paddison also requested that Respondent turn over Bruggeman's entire file and submit a final bill and the unused portion of the retainer. Respondent emailed Paddison on December 14 and told her that she was in the hospital but would try to bring the file to Paddison's office. Paddison offered to pick up the file and visited Respondent's office, but no one was there.

On January 7, 2013, Paddison again emailed Respondent requesting the return of Bruggeman's file. Respondent delivered the file on January 11. In the file, there were no tax returns or any notes or documentation regarding preparation of the tax returns. Further, there were no communications between Respondent and the California Tax Board. Respondent told Paddison that she did not give her the draft returns because they were not accurate and because she was worried that a subsequent preparer might use her work as a starting point. Respondent claimed to have shredded the drafts.

During the investigation of this matter, Respondent told the People that she did not retain a copies of her work, documentation of any communications she made, or research she completed in preparing the tax returns. Nor did she document her efforts to resolve the issue with the California Tax Board.

Through the conduct described above, Respondent violated five Rules of Professional Conduct:

- Colo. RPC 1.1 requires a lawyer to provide competent representation to a client. By failing to maintain Bruggeman's file or to document the work she was retained to perform, Respondent violated this rule.

- Colo. RPC 1.3 provides that a lawyer must act with reasonable diligence and promptness in representing a client. Respondent violated this rule when she failed to prepare and file the tax returns and to communicate with the California Tax Board.

- Colo. RPC 1.5(f) states that fees are not earned until the lawyer confers a benefit upon or performs a service for a client, and it requires that all unearned fees be placed in a COLTAF account. By failing to complete any work on Bruggeman's estate and by allowing her COLTAF bal-

ance to reach $37.50, Respondent violated Colo. RPC 1.5(f).

- Colo. 1.16(d) requires a lawyer to surrender unearned fees to a client upon termination of representation. Respondent violated this rule when she did not return Yang's retainer after Paddison discharged her.

- 8.4(c) proscribes dishonesty, fraud, deceit, or misrepresentation. Respondent misrepresented to Yang and Paddison that she was preparing the tax returns and that she was communicating with the California Tax Board. Respondent also knowingly converted the unearned fees by retaining and consuming them. She thereby violated Colo. RPC 8.4(c).

### Griffiths Matter

Michael Griffiths hired Respondent to assist him with tax-related issues, including submitting an Injured Spouse Allocation Form and a cover letter to the Internal Revenue Service ("IRS"). On June 8, 2012, Respondent emailed Griffiths a draft cover letter to the IRS, a Form 8379 (Injured Spouse Allocation), and a Form 2848 (Power of Attorney). She requested that he fill out the forms and return them to her. She further advised him to cease communicating with the IRS and to communicate directly with her.

On June 11, 2012, Griffiths delivered the documents to Respondent. He then contacted her two days later wondering whether the forms had been filled out correctly. Respondent replied that the forms were correct and told him that she would send them to the IRS that same day. Respondent sent Griffiths a bill on June 14 for $357.50 for 1.3 hours of work, charged at her hourly rate of $275.00. Respondent's billing statement reflects that she signed the two forms and mailed them to the IRS. Respondent then requested an additional retainer for $192.50. On June 19, Respondent deposited $550.00 she received from Griffiths into her business account. Griffiths sent Respondent an email on June 26 informing her that he wished to pick up his file and asking when they would hear from the IRS. Respondent replied that they should hear from the IRS in approximately six weeks.

On December 5, Griffiths emailed Respondent and asked her to contact the IRS, and Respondent replied that she would call the next day with an update. Five days later, he again asked Respondent about the status of his case. On February 9, 2013, Griffiths learned that Respondent had not filed the Injured Spouse Allocation Form. He terminated her representation by letter on February 14, expressing his dissatisfaction with Respondent's communication and advising her that he discovered she had not filed any forms with the IRS. Griffiths demanded that Respondent return his money within thirty days. Respondent never returned any of Griffiths's fees. During the investigation of her conduct, Respondent told the People that the IRS must have lost the paperwork she had filed. She also stated that she did not keep a copy of the paperwork she allegedly filed with the IRS, nor did she send the forms to the IRS via certified mail. She believed she was entitled to her entire fee because she prepared and filed the forms with the IRS, although she admitted that she was not diligent in following up with the IRS.

Through this conduct, Respondent violated four Rules of Professional Conduct:

- Respondent violated Colo. RPC 1.1 when she failed to maintain Griffiths's file and document the work she claimed to have performed. She also failed to keep copies of the forms she allegedly filed with the IRS.

- Respondent contravened Colo. RPC 1.3 when she neglected to file the Injured Spouse Allocation Form with the IRS.

- By depositing the entire amount of Griffiths's fees into her business account before completing any work, Respondent violated Colo. RPC 1.5(f).

- Respondent knowingly converted $550.00 from Griffiths and then made misrepresentations to him about the status of his claim in violation of Colo. RPC 8.4(c).

### Ursich Matter

Eric Ursich hired Respondent on September 12, 2012, to assist him with per-

sonal and business tax issues. Respondent charged him a flat fee of $2,750.00. Ursich used his credit card to pay the retainer. Respondent then sent him a fee agreement, which Ursich signed and returned. He did not keep a copy of the agreement. He asked Respondent to send him a copy of the fee agreement, but she did not do so. Ursich believed the flat fee was for Respondent to file an offer in compromise ("OIC") with the IRS for both his personal and his business taxes. If additional work were required, they would negotiate an additional fee.

In January 2013, Ursich became concerned because the IRS continued to send him notices directly. He discovered that Respondent had failed to file a power of attorney ("POA") and the OIC with the IRS. Respondent told him that she had filed the POA but would re-file it. Respondent did file a POA and the OIC with the IRS but only for Ursich's personal tax matter, not his business matter. Respondent told Ursich that only one filing was necessary. In June 2013, Ursich became frustrated with Respondent's lack of communication and requested she provide him with an accounting and return his retainer. She did not respond to his request. In October, Respondent notified Ursich that she was closing her practice and would turn his file over to another attorney. Ursich requested that she give his file to attorney Cory Marx, but she did not do so. Marx has since filed the appropriate paperwork with the IRS and Ursich is awaiting the outcome. Respondent never responded to the People's request for information during their investigation of this matter.

Through the conduct described above, Respondent violated four Rules of Professional Conduct:

- When Respondent failed to file the paperwork with the IRS for Ursich's business entity, she violated Colo. RPC 1.1.

- Respondent violated Colo. RPC 1.3 by failing to timely file the POA for Ursich's personal taxes and by failing to file the POA and the OIC for Ursich's business.

- Colo. RPC 1.15(b) [6] provides that a lawyer must promptly deliver to a client any funds the client is entitled to receive. Respondent violated this rule when she failed to produce an accounting and to return Ursich's unearned funds promptly upon his request and upon termination of the representation.

- By failing to complete the work she was hired to perform and by refusing to refund Ursich's retainer, Respondent violated Colo. RPC 1.16(d).

## IV. SANCTIONS

■ The American Bar Association *Standards for Imposing Lawyer Sanctions* (1991 & Supp.1992) ("ABA *Standards*") and Colorado Supreme Court case law guide the imposition of sanctions for lawyer misconduct.[7] When imposing a sanction after a finding of lawyer misconduct, the Court must consider the duty violated, the lawyer's mental state, and the actual or potential injury caused by the lawyer's misconduct. These three variables yield a presumptive sanction that may be adjusted based on aggravating and mitigating factors.

### ABA *Standard* 3.0—Duty, Mental State, and Injury

*Duty:* By engaging in a pattern of neglect and abandonment of multiple clients, Respondent violated duties she owed to her clients to diligently pursue their cases and to complete the work she was hired to perform. She also disregarded her obligations to her clients by knowingly converting their fees and by failing to provide them with an accounting.

*Mental State:* The complaint explicitly establishes that Respondent knowingly converted funds belonging to Yang and Griffiths. The admitted facts also strongly suggest that Respondent knowingly committed the other misconduct in this case when she failed to act with competence and diligence, failed to complete services she had agreed to perform,

---

6. The People allege that Respondent violated the version of Colo. RPC 1.15(b) that was effective prior to June 17, 2014.

7. *See In re Roose,* 69 P.3d 43, 46–47 (Colo.2003).

and disregarded her clients' attempts to communicate with her.

*Injury:* Respondent caused to Yang and Griffiths serious injury when she knowingly converted their funds. She caused Ursich additional financial hardship because he was forced to hire a new attorney without the benefit of his flat fee, which Respondent did not return. Respondent also compromised the integrity of the legal profession by undermining her clients' and the public's confidence in attorneys and the legal profession.

Additionally, Respondent abandoned three clients' cases, thereby causing them serious injury when she failed to advance their tax matters. For instance, in her affidavit Yang stated that Bruggeman's estate suffered harm caused by Respondent's delay in completing the tax work that she was hired to perform. Because she did not finish that work, the estate had to pay additional interest and penalties.

Griffiths described injury he suffered due to Respondent's failure to diligently handle his tax matter. He testified that it took more than eight months for him to settle his $12,000.00 claim with the IRS. He had to restart his case from the beginning and was unable to use any of the work Respondent had completed. As a result, he did not have access to the disputed $12,000.00 for more than eight months.

Ursich also testified at the hearing as to the harm Respondent caused him. He stated that he was forced to file a small claims case against Respondent in order to recover his fees. Default judgment was entered against her for $3,487.08, but Respondent has not satisfied the judgment.[8] Ursich also said that his IRS matter remains unresolved and the IRS depleted his bank account, taking over $2,500.00. His claim has now been delayed more than two years, and he has suffered additional financial detriment as a result. Ursich stated that Respondent's conduct has caused him great financial harm.

### ABA *Standards* 4.0–7.0—Presumptive Sanction

Disbarment is the presumptive sanction under ABA *Standard* 4.11 when a lawyer knowingly converts client property and causes the client injury.[9] Similarly, ABA *Standard* 4.41 calls for disbarment when a lawyer causes serious or potentially serious injury to a client by knowingly failing to perform services for a client, engaging in a pattern of neglect with respect to client matters, or abandoning the practice.

### ABA *Standard* 9.0—Aggravating and Mitigating Factors

Aggravating circumstances include any considerations or factors that may warrant an increase in the degree of discipline to be imposed, while mitigating circumstances may justify a reduction in the severity of the sanction.[10]

In this case, five aggravating factors are present. First, Respondent had a dishonest motive.[11] Second, Respondent engaged in a pattern of misconduct in three separate client matters from mid-2012 to mid-2013. Third, she not only failed to competently represent her clients and to act with diligence and promptness in handling their cases, but she also knowingly consumed client funds and refused to return unearned funds when she was discharged, thereby committing multiple offenses.[12] Fourth, Respondent has been practicing law since 1990, and thus has substantial experience. Finally, Respondent's failure to repay her clients reflects an indifference to making restitution.[13] Because Respondent did not participate in the disciplinary proceeding, the Court is aware of just one mitigating factor—her lack of a prior

---

8. Ex. 4.

9. Although Appendix 1 of the ABA *Standards* indicates that the standards applicable to violations of Colo. RPC 8.4(c) are ABA *Standards* 4.6 and 5.1, the Court determines that ABA *Standard* 4.1, "Failure to Preserve the Client's Property," is more relevant acts of conversion that violate Colo. RPC 8.4(c).

10. *See* ABA *Standards* 9.21 & 9.31.

11. ABA *Standard* 9.22(b).

12. ABA *Standard* 9.22(d).

13. ABA *Standard* 9.22(j).

disciplinary record—which the Court considers in mitigation.[14]

### Analysis Under ABA *Standards* and Colorado Case Law

The Court is aware of the Colorado Supreme Court's directive to exercise discretion in imposing a sanction and to carefully apply aggravating and mitigating factors,[15] mindful that "individual circumstances make, extremely problematic any meaningful comparison of discipline ultimately imposed in different cases." [16]

Colorado case law identifies disbarment as the proper sanction when a lawyer knowingly converts client funds, absent significant mitigation.[17] This is true even if the lawyer did not necessarily intend to permanently deprive the client of funds.[18] Where a lawyer's conversion of client funds is coupled with abandonment of the client, it is all the more clear that disbarment is warranted, particularly when a lawyer knowingly disregards the ensuing disciplinary proceeding.[19]

Here, given the aggravating factors, relevant Colorado Supreme Court case law, and Respondent's failure to participate in this proceeding, the presumptive sanction of disbarment is clearly warranted.

### V. *CONCLUSION*

Respondent violated her duties to her client, the public, and the legal profession by knowingly converting funds belonging to her clients and by abandoning three client matters. Given that the presumptive sanction is disbarment and that the aggravating factors outweigh the mitigating factors, Respondent must be disbarred.

### VI. *ORDER*

The Court therefore **ORDERS:**

1. **SUSAN LINDLEY,** attorney registration number 20135, is **DISBARRED.** The **DISBARMENT SHALL** take effect only upon issuance of an "Order and Notice of Disbarment." [20]

2. Respondent **SHALL** promptly comply with C.R.C.P. 251.28(a)-(c), concerning winding up of affairs, notice to parties in pending matters, and notice to parties in litigation.

3. Respondent also **SHALL** file with the Court, within fourteen days of issuance of the "Order and Notice of Disbarment," an affidavit complying with C.R.C.P. 251.28(d), requiring an attorney to file an affidavit with the Court setting forth pending matters and attesting, inter alia, to notification of clients and other jurisdictions where the attorney is licensed.

4. The parties **SHALL** file any post-hearing motion or application for stay pending appeal **on or before Monday, January 12, 2015.** No extensions of time will be granted. Any response thereto **SHALL** be filed within seven

---

14. ABA *Standard* 9.32(a)

15. *See In re Attorney F.*, 285 P.3d 322, 327 (Colo. 2012); *In re Fischer*, 89 P.3d 817, 822 (Colo. 2004) (finding that a hearing board had overemphasized the presumptive sanction and undervalued the importance of mitigating factors in determining the needs of the public).

16. *In re Attorney F.*, 285 P.3d at 327 (quoting *In re Rosen*, 198 P.3d 116, 121 (Colo.2008)).

17. *In re Haines*, 177 P.3d 1239, 1250 (Colo. 2008); *In re Cleland*, 2 P.3d 700, 703 (Colo. 2000).

18. *People v. Varallo*, 913 P.2d 1, 10–11 (Colo. 1996).

19. *See In re Stevenson*, 979 P.2d 1043, 1045 (Colo.1999) (disbarring an attorney who abandoned his client, misappropriated funds, and failed to participate in the disciplinary proceeding); *People v. Kuntz*, 942 P.2d 1206, 1208 (Colo. 1997) (disbarring an attorney where the attorney accepted legal fees from several clients, performed little to no work on their cases, and abandoned the clients without returning their funds); *People v. Roybal*, 949 P.2d 993 (Colo. 1997) (disbarring attorney for abandoning clients, failing to return unearned fees, and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation).

20. In general, an order and notice of disbarment will issue thirty-five days after a decision is entered pursuant to C.R.C.P. 251.19(b) or (c). In some instances, the order and notice may issue later than thirty-five days by operation of C.R.C.P. 251.27(h), C.R.C.P. 59, or other applicable rules.

days, unless otherwise ordered by the Court.

5. Respondent **SHALL, on or before Tuesday, January 20, 2015,** pay $91.00 in costs to the People.[21]

6. The People's "Motion to File Notice of Restitution Out of Time," filed on December 16, 2014, is **GRANTED.** Respondent **SHALL, on or before Tuesday, January 20, 2015,** pay **RESTITUTION** of: $3,775.00 to Janet Yang; $550.00 to Michael Griffiths; and $2,750.00 to Eric Ursich.

---

21. The People filed a statement of costs at the hearing in the amount of $91.00 for an administrative fee.